UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| IN RE:                          ) | |
|                                ) | CASE NO.  13-31442 |
| SEVEN COUNTIES SERVICES, INC.,   ) | |
|                                ) | CHAPTER 11 |
|             Debtor.          ) | JUDGE JOAN A. LLOYD |
| _____) | |
|                                ) | |
| KENTUCKY EMPLOYEES RETIREMENT  ) | |
| SYSTEM,                          ) | |
|                                ) | |
|            Plaintiff        ) | |
|                                ) | |
| v.                              ) | ADV. PRO. NO. |
|                                ) | |
| SEVEN COUNTIES SERVICES, INC.,   ) | |
|                                ) | |
|           Defendant.      ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT, DISMISSAL OF CHAPTER 11 BANKRUPTCY CASE AND INJUNCTIVE RELIEF

Kentucky Employees Retirement System[1] ("KERS"), a party-in-interest to the above-captioned case, for its Complaint for Declaratory Judgment, Dismissal of Chapter 11 Bankruptcy Case and Injunctive Relief against Seven Counties Services, Inc. ("Seven Counties" or "Debtor"), avers as follows:

## JURISDICTION AND VENUE

1.       Seven Counties is the Debtor in the above-captioned chapter 11 case.

2.       This Court has jurisdiction over the matters alleged herein pursuant to 28 U.S.C. §§ 157, 1334 and 2201-2202, and LR 83.12.

---

[1] Kentucky Employees Retirement System is an arm of the Commonwealth of Kentucky cloaked with its sovereign immunity under the Eleventh Amendment to the United States Constitution. U.S. Const. amend. XI. KERS does not waive such sovereign immunity and does not waive its right to contest the scope of abrogation of sovereign immunity by the Bankruptcy Clause of the United States Constitution, as specified in 11 U.S.C. § 106. *See* Art. U.S. Const. art. I, § 8, cl. 4.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The matters alleged in Counts I, II and III herein constitute core proceedings under 28 U.S.C. § 157(b)(2)(A) and (O) and Bankruptcy Rule 7001, and the entry of a final judgment by this Court will not violate Article III of the U.S. Constitution.[2]

## PARTIES

**A.      KERS**

5.      KERS was created by statute (KRS 61.515) in 1956 "to provide a secure means of retirement savings for state government employees."  *Jones v. Bd. of Trs. of Ky. Ret. Sys.*, 910 S.W.2d 710, 711 (Ky. 1995).

6.      KERS is an arm of the Commonwealth of Kentucky and is administered by the Board of Trustees of the Kentucky Retirement System ("KRS"), which is an "agency" under the Executive Branch of the Commonwealth of Kentucky.   KRS 61.515, 61.645(1), 11A.010(7), (10), and 12.020 II 9(k).

7.      KERS has the "powers and privileges of a corporation."  KRS 61.515(1).

**B.      Seven Counties**

8.      Seven Counties is the regional mental health-mental retardation ("MH-MR") board designated by the Cabinet for Health and Family Services ("CHFS") of the Commonwealth of Kentucky for Bullitt, Henry, Jefferson, Oldham, Shelby, Spencer and Trimble Counties pursuant to, and subject to the provisions of, KRS 210.370-210.485 and 908 KAR 2:010-2:230.

---

[2] KERS does not consent to the entry of a final judgment by this Court on any claims on which this Court cannot enter a final judgment due to 28 U.S.C. § 157(c) and article III of the U.S. Constitution as analyzed in *Stern v. Marshall*, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), to the extent that any such consent is valid in the Sixth Circuit following *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012), *cert. denied*, 133 S.Ct. 1604, 185 L.Ed.2d 581 (2013).

## BACKGROUND

**A.    Case History**

9.      On April 4, 2013 (the "Petition Date"), Seven Counties filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  Pursuant to Sections 1107 and 1108[3] of the Bankruptcy Code, Seven Counties continues to operate its business and manage its property as a debtor–in–possession.

10.     On April 5, 2013, Seven Counties filed its Motion for Approval of Debtor's Rejection of a Potentially Executory Contract with KERS and/or KRS (Doc. No. 9) (the "Motion to Reject").

11.     On April 29, 2013, Seven Counties filed its Complaint for Declaratory Judgment and Injunctive Relief (Doc. No. 74) commencing Adversary Proceeding No. 13-03014 (the "Debtor's Adversary").

12.     Also on April 29, 2013, KERS filed its Emergency Motion to Compel Debtor to Comply with its Obligations to Make Ongoing Statutorily Required Payments of Employer and Employee Contributions (Doc. No. 75) (the "Motion to Compel").  Seven Counties filed its Objection to the Motion to Compel on May 6, 2013 (Doc. No. 90).

13.     On May 6, 2013, KERS filed its Motion to Dismiss Chapter 11 Bankruptcy Case because Seven Counties Services, Inc. is not Eligible to be a Debtor (Doc. No. 89) (the "Motion to Dismiss").

14.     This Court held a hearing on May 7, 2013, following which it entered an Order (Doc. No. 93) holding, in relevant part, that the Motion to Compel was denied without prejudice to KERS' right to bring its request for relief in an appropriate adversary proceeding; that the Motion to Dismiss was held in abeyance for a period of sixty (60) days; and that KERS shall

---

[3] All statutes cited herein refer to the Bankruptcy Code unless otherwise specified.

3

have up to and including June 10, 2013 to, among other things, initiate a new adversary proceeding.

15.     In response to the Court's Order and its direction at the hearing held on May 7 that Seven Counties identify the contract at issue in their Motion to Reject, on May 17, 2013 Seven Counties filed its Amended Motion for Approval of Debtor's Rejection of a Potentially Executory Contract with KERS and/or KRS on (Doc. No. 103) (the "Amended Motion to Reject").

16.     In its Amended Motion to Reject, Seven Counties elaborates on the relief it is seeking in Debtor's Adversary, stating that if its participation in KERS is non-contractual (such that its Amended Motion to Reject will fail) it "will prove that either ERISA prevents Seven Counties from maintaining the relationship, or ERISA pre-empts state law and permits Seven Counties to withdraw."  (Am. Mot. to Reject, ¶ 17).

17.     Whether, under Debtor's Adversary, Seven Counties has any standing to assert a claim under ERISA, whether Seven Counties has stated any claim, whether ERISA has any application, and whether those claims are barred by sovereign immunity under the Eleventh Amendment to the United States Constitution, are separate and unrelated issues to the claims asserted in the instant Complaint concerning Seven Counties' status as a "governmental unit" under 11 U.S.C. § 101(27), and therefore its eligibility for chapter 11 relief under 11 U.S.C. § 109(a), (b) and (d), as well as the requirements of 28 U.S.C. § 959 and 11 U.S.C. § 363(d)(1) that Seven Counties comply with its obligations to KERS under the Kentucky Revised Statutes during the pendency of this bankruptcy.

18.     By this Complaint, in accordance with the Court's instructions at the May 7 hearing and the Order (Doc. No. 93), KERS brings its requests for relief previously asserted in

the Motions to Compel and to Dismiss in the form of an adversary proceeding, separate from the Debtor's Adversary.

### B.      Purpose for and Function of Regional MH-MR Programs

19.      As a break from the mental institutions of the past, the federal government enacted the Mental Retardation Facilities and Community Mental Health Centers Act of 1963 (the "Federal Act").  Pub. L. No. 88-164, 70 Stat. 717, *et seq.*

20.      In order to take advantage of the allotments to states under the Federal Act, in 1964 the Kentucky General Assembly enacted the Community Mental Health Act, which provided that upon consent of the Commissioner of Mental Health there may be established regional community MH-MR programs.

21.      The Community Mental Health Act is now Chapter 210 of the Kentucky Revised Statutes.

22.      Seven Counties is part of the state–wide network of fourteen (14) MH-MR boards and programs designated by CHFS that collectively provide the services specified in KRS 210.410(1)(a)-(f) to the citizens of Kentucky regardless of ability to pay.  *See* Legis. Research Comm'n, Program Review and Investigations Comm., Research Rep. No. 340, at vii-viii, 5-8 (2006, rev. June 2007) (providing further background and a map of the regional programs), excerpts are attached as Exhibit A; *see also* The Kentucky Association of Mental Health/Mental Retardation Programs, http://www.karponline.org (last visited May 3, 2013) (website for the Association, KARP, representing the 14 Community Mental Health Centers in Kentucky, of which Seven Counties is a member).

23.      Seven Counties and its sister entities provide critical mental health services to the public and those most vulnerable, such as children and the elderly, and are required to provide

services regardless of a person's ability to pay. *See e.g.*, Ky. OAG 85-99, 1985 Ky. AG LEXIS 50 (July 3, 1985), attached as Exhibit B (stating that "North Central Comprehensive Care . . .  is a nonprofit corporation organized to carry out public purposes involving mental health and mental retardation pursuant to KRS 210.370 et seq., located in Washington County and serving Washington County residents.").

24.     Seven Counties is part of a "safety net" for individuals who are indigent or otherwise unable to care for themselves and who require mental health, intellectual disability (mental retardation) and substance abuse services.

25.     Providing mental health, mental retardation and related services for the indigent and those unable to care for themselves is a "safety net," traditional function of government.

**C.     Designation of Seven Counties as the Regional MH-MR Board by CHFS under Chapter 210, Kentucky Revised Statutes**

26.     Seven Counties "derives its authority to provide community mental health and mental retardation services from Chapter 210 of the Kentucky Revised Statutes, governing community mental health programs and regional [MH-MR] boards."  Ky. Op. Atty. Gen 02-ORD-222, 2002 WL 34106496, at 2 (Ky. A.G.), attached as Exhibit G.[4]

27.     Seven Counties was organized on June 28, 1978 pursuant to Chapter 273 of the Kentucky Revised Statutes, Sections 273.010 to 273.060 in particular, as a Kentucky non-profit corporation.  *See* Articles of Incorporation at 4, Article II(g), attached as Exhibit F.

28.     Pursuant to KRS 210.370 and 210.380, CHFS designated Seven Counties as the regional MH-MR board for Bullitt, Henry, Jefferson, Oldham, Shelby, Spencer and Trimble Counties effective August 1, 1978.

---

[4] In order to use a uniform set of Exhibits throughout its various filings and because those Exhibits appear in a different order in this Complaint, the Exhibits are not referenced herein in alphabetical order.

29.     Although Seven Counties is organized as a private nonprofit corporation, it "is by no means the same as a private healthcare facility, but is instead a facility operating under a plan and budget approved by the Cabinet and the comprehensive scheme of legislation embodied in Chapter 210." Ky. Op. Atty. Gen 02-ORD-222, 2002 WL 34106496, at 3, attached as Exhibit G.

**D.      Commonwealth's Control of Regional MH-MR Boards and Seven Counties**

30.     There are numerous ways in which the Commonwealth of Kentucky, via CHFS and otherwise, exercises on-going control over Seven Counties under both the Kentucky Revised Statutes and Kentucky Administrative Regulations.

31.     The Kentucky Court of Appeals has affirmed that KRS Chapter 210, especially KRS 210.450, empowers the Secretary of CHFS to prescribe policies and regulations governing community mental health centers run by MH-MR boards. *See Ky., Bd. of Exam'rs of Psychology v. Funk*, 84 S.W.3d 92, 97 (Ky. 2002).

32.     In order to establish a regional community services program, KRS 210.380 states that a community board must be established, and the board membership "shall be representative of the elected chief executives of county governments, local health departments, medical societies, county welfare boards, hospital boards, lay associations concerned with mental health and intellectual disabilities as well as labor, business and civic groups, and the general public."

33.     The Secretary of CHFS is statutorily required to set policies and regulations for the regional MH-MR programs that, among other things, govern "eligibility for service so that no person will be denied service on the basis of race, color or creed, or inability to pay . . . ." KRS 210.450(1).

34.     Seven Counties is mandated by statute to provide certain services, which are as follows:

      (a)  Inpatient services;
      (b)  Outpatient services;
      (c)  Partial hospitalization;
      (d)  Emergency services;
      (e)  Consultation and education services; and
      (f)  Services for individuals with an intellectual disability.

KRS 210.410(1)(a)-(f).

35.    The groups of persons to who such services "shall be available" include "the mentally ill, drug abusers and alcohol abusers, and all age groups including children and the elderly," as well as "individuals with an intellectual disability."  KRS 210.410(2).

36.    As set forth below, KRS 210.370 to 210.460 are replete with numerous, on-going controls exercised by CHFS, a cabinet department of the Executive Branch of the Commonwealth of Kentucky, over community/regional MH-MR boards such as Seven Counties.

37.    CHFS controls the existence and funding of the regional MH-MR boards and programs such as Seven Counties.

38.    The Commonwealth's ultimate control over entities like Seven Counties is the power of the Secretary of CHFS to designate a non-profit corporation as the regional MH-MR board with the authority to exercise the various powers provided for under Chapter 210 of the Kentucky Revised Statutes.  *See* KRS 210.370 and 210.380.

39.    Without the designation from CHFS as the regional MH-MR board, Seven Counties would lack any of the powers provided for in Chapter 210, it would not be funded by CHFS with state general funds, and it would likewise not be a department eligible to participate in KERS under KRS 61.510(3) and 61.525.

40.    With regard to state funding of regional MH-MR boards such as Seven Counties, KRS 210.410 provides that the Secretary of CHFS is "authorized to make state grants and other

fund allocations from [CHFS] to assist . . . nonprofit corporations in the establishment and operation of regional mental health and intellectual disability programs . . . ."

41.     KRS 210.420 specifies the categories of expenditures for which grants from state general funds may be provided to regional MH-MR boards, such as Seven Counties.  Grants are capped at 50% of the program's total expenditures for:

> (a) Salaries;
> (b) Contract facilities and services;
> (c) Operation, maintenance, and service costs;
> (d) Per diem and travel expenses for members of the community boards for mental health or individuals with an intellectual disability; and
> (e) Other expenditures specifically approved by the secretary for health and family services.

KRS 210.420(1).

42.     KRS 210.420(2) mandates that the Secretary of CHFS "shall distribute" to community mental health boards such as Seven Counties "those general funds appropriated to the cabinet for the operation of regional community programs for mental health or individuals with an intellectual disability," allocation of which are governed by KRS 210.440(1) and (2). KRS 210.420(2); Ky. Op. Atty. Gen 02-ORD-222, 2002 WL 34106496, at 3 (citing a prior version of KRS 210.420(2)), attached as Exhibit G.

43.     Distributions from CHFS to community mental health boards such as Seven Counties shall be made by a formula that includes provisions for "per capital allocations," "incentive allocations," and "discretionary allocations to be available to the secretary to maintain essential services pursuant to KRS 210.410," but which formula is "prescribed by administrative regulations."  KRS 210.420(2)(a)-(c).

44.     908 KAR 2:050 is the administrative regulation setting forth the formula by which state appropriated funds, including general funds appropriated by the Kentucky General

Assembly as well as any revenue raised locally by a MH-MR board, including a MH-MR tax (KRS 210.460, 210.470, 210.480), are allocated via distributions made by CHFS to entities such as Seven Counties.

45.    In order to obtain the funding provided for in the above-referenced statutory provisions, entities such as Seven Counties, must annually submit to the Secretary of CHFS "its plan, budget, and membership of the board for the next fiscal year."  KRS 210.430.

46.    As set forth in KRS 210.430, "[n]o program shall be eligible for a state grant and other fund allocations from [CHFS] hereunder unless its plan and budget have been approved by the secretary of [CHFS], and . . . unless the board composition is reasonably representative of those groups enumerated in KRS 210.380."

47.    KRS 210.440(1) provides that the Secretary of CHFS shall allocate funds to community mental health boards such as Seven Counties and can also withdraw them "if funds are not needed for a program for which they were allocated" or if any "program, or component part thereof . . . is not being operated and administered in accordance with its approved plan and budget, and the policies and administrative regulations of the cabinet promulgated pursuant to KRS 210.370 to 210.480."

48.    Pursuant to KRS 210.440(2), the Secretary of CHFS "may withdraw his recognition" of Seven Counties "as the local authority for the receipt of funds and the operation and administration of regional community programs for mental health or individuals with an intellectual disability" if the Secretary "finds at any time" that Seven Counties "is not operating and administering its program in compliance and accordance with the approved plan and budget and the policies and administrative regulations of [CHFS]."

49.     When a regional MH-MR board such as Seven Counties is in financial trouble the Secretary of CHFS also has the power to effectively take over and ensure the continued operations via the following statutory provision:

> (3)     If the secretary finds at any time that an emergency situation exists with regard to the financial stability of any regional board for mental health or individuals with an intellectual disability or nonprofit organization, which jeopardizes the continuation of programs and provision of services in the area served by that board or nonprofit organization, he may, other statutes to the contrary notwithstanding:
>
> (a)     Appoint a caretaker administrator who shall be authorized to direct the operation and administration of the board or nonprofit organization's community programs for mental health or individuals with an intellectual disability including, but not limited to, their financial record keeping, their personnel management operations, and their financial and program reporting; and
>
> (b)     Make personnel changes deemed necessary to insure the continued operation of the board or nonprofit organization in compliance with its plan and budget and the policies and regulations of the cabinet.

KRS 210.440(3)(a)-(b).

50.     If Seven Counties is either not operating in accordance with its approved plan and budget or the policies and administrative regulations set for such regional MH-MR boards, or if Seven Counties is in emergency financial trouble and the Secretary of CHFS determines it will need to take action, then the Secretary is required to give thirty days written notice to the chairman of the board of Seven Counties stating the reasons for anticipated action under either KRS 210.440(2) or (3), after which Seven Counties could comply or request an administrative hearing.  KRS 210.440(4)(a)-(b).

51.     With respect to the board members of Seven Counties, KRS 210.390 provides the term limits, the manner for filing board vacancies, and the manner for removal of board members by the appointing authority.

52.     There are seven specific duties of boards, such as the board of Seven Counties, as set forth in KRS 210.400, which include the duty to "oversee and be responsible for the management of the community program for mental health or individuals with an intellectual disability in accordance with the plan and budget adopted by the board and the policies and regulations issued under KRS 210.370 to 210.480 by the secretary of [CHFS]." KRS 210.400(7).

53.     Boards, such as the board of Seven Counties, are also statutorily required to "[r]eview and evaluate services for mental health or individuals with an intellectual disability provided pursuant to KRS 210.370 to 210.460," as well as being required to "report thereon to the secretary of [CHFS], the administrator of the program, and, when indicated, the public, together with recommendations for additional services and facilities."  KRS 210.400(1).

54.     The board of Seven Counties also has the following specific duties under KRS 210.400(2)-(6), as follows:

> (2)     Recruit and promote local financial support for the program from private sources such as community chests, business, industrial and private foundations, voluntary agencies, and other lawful sources, and promote public support for municipal and county appropriations;
>
> (3)     Promote, arrange, and implement working agreements with other social service agencies, both public and private, and with other educational and judicial agencies;
>
> (4)     Adopt and implement policies to stimulate effective community relations;

> (5)    Be responsible for the development and approval of an annual plan and budget;
>
> (6)    Act as the administrative authority of the community program for mental health or individuals with an intellectual disability.

55.    Regional/community MH-MR boards, such as Seven Counties, can act in a fiduciary capacity for mentally disabled persons, but only if the board is recognized by the Secretary of CHFS.

56.    Seven Counties' powers and duties of a fiduciary nature, which are controlled by CHFS, are as follows:

> (1) Any regional community board for mental health or individuals with an intellectual disability established pursuant to KRS 210.380 and recognized by the secretary of the Cabinet for Health and Family Services may be appointed and act as executor, administrator, guardian, limited guardian, conservator, or limited conservator, as provided in this section.  In this capacity, the board may transact business in the same manner as any individual and for this purpose may sue and be sued in any of the courts of the state. Bond shall not be required of the board.
>
> (2) Whenever a person who has been adjudged mentally disabled and requires mental health services has no guardian or conservator, the board, acting through its designated officer, may apply to the District Court of the county in which the adjudication was made for its appointment as guardian or conservator for such mentally disabled person.  The board may also apply to be substituted as guardian or conservator for a mentally disabled person whose guardian or conservator is the Cabinet for Health and Family Services and who has been discharged or whose discharge is imminent from a Cabinet for Health and Family Services facility.

KRS 210.405(1)-(2) (emphasis added).

57.    KRS 210.450 provides for "additional powers and duties of secretary" of CHFS in regard to regional programs like Seven Counties, as follows:

13

In addition to the powers and duties already conferred upon him by law, the secretary of [CHFS] shall:

(1) Promulgate policies and regulations governing eligibility of community programs for mental health or individuals with an intellectual disability to receive state grants and other fund allocations from [CHFS], prescribing standards for qualification of personnel and quality of professional service and for in-service training and educational leave programs for personnel, governing eligibility for service so that no person will be denied service on the basis of race, color or creed, or inability to pay, providing for establishment of fee schedules which shall be based upon ability to pay, regulating fees for diagnostic services, which services may be provided for anyone without regard to his financial status, when referred by the courts, schools, or health and welfare agencies whether public or private, governing financial record keeping, prescribing standards for personnel management operations, providing for financial and program reporting requirements, and such other policies and regulations as he deems necessary to carry out the purposes of KRS 210.370 to 210.460;

(2) Review and evaluate local programs and the performance of administrative and psychiatric personnel and make recommendations thereon to community boards for mental health or individuals with an intellectual disability and program administrators;

(3) Provide consultative service, by professionals qualified in the areas of mental health and intellectual disabilities by education and training, to communities to assist in ascertaining local needs and in planning and establishing community programs for mental health or individuals with an intellectual disability;

(4) Employ necessary and qualified personnel to implement KRS 210.370 to 210.460; and

(5) Review annually the personnel policies, procedures, and personnel compensation plans of community boards for mental health or individuals with an intellectual disability and disapprove if not consistent with accepted standards of personnel and salary administration prescribed by the cabinet.

58.     There are further specific controls of the Commonwealth over entities such as Seven Counties, which are set forth in Chapter 2 of Title 908 of the Kentucky Administrative Regulations, which have been promulgated pursuant KRS 210.370 to 210.460.

59.     908 KAR 2:010 Section 1 applies to Seven Counties and states that "[f]or purposes of implementing the delegated regional responsibilities of the Cabinet for Human Resources, Department for Mental Health and Mental Retardation Services, the regional [MH-MR] boards shall become the local authority."

60.     908 KAR 2:010 Section 1 also states that "[a]ll grants for local programs in [MH-MR] or substance abuse implemented under the auspices of the cabinet shall be directed to agencies recognized as regional [MH-MR] boards by [CHFS], Department for Mental Health and Mental Retardation Services.

61.     908 KAR 2:010 Section 2 states that "[a]ll regional [MH-MR] boards shall comply with the policies issued by the cabinet to insure compliance with applicable federal and state laws and regulations," which shall include "planning, budgeting, reporting, operating procedures and other administrative functions."

62.     908 KAR 2:020, titled "Personnel rules of local board" prescribes the specific policies to be followed by Seven Counties, as a regional MH-MR board, including establishment and maintenance of personnel files, which "shall be subject to state and federal examination" (Section 1); maintenance of personnel policies to be filed with the Cabinet for Human Resources (Section 2); maintenance of time and attendance records subject to state and federal audit (Section 3); and preparation and maintenance of a classification and compensation plans for personnel (Section 4).

63.    908 KAR 2:030, titled "[b]oard structure and operation; eligibility for state grants" governs the recognition by CHFS of entities such as Seven Counties as regional MH-MR boards.

64.    908 KAR 2:030 Section 2 provides that a nonprofit corporation such as Seven Counties, to the extent it requests recognition from the Secretary of CHFS "as a district [MH-MR] board for the purpose of obtaining state funds, shall annually submit to the secretary, not later than the first day of April of the year preceding the fiscal year for which applicant requests recognition, an application approved by its board of directors" that contains various documentation and agreements listed therein.

65.    908 KAR 2:030 Section 3 sets forth a variety of criteria for membership of the board of directors of entities such as Seven Counties and requires that "[a]ll nonprofit [MH-MR] boards shall be appointed in accordance with KRS 210.380 and applicable federal regulations."

66.    KRS 210.380 provides, in relevant part, that membership of the boards of entities such as Seven Counties shall be "representative of the elected chief executives of county governments, local health departments, medical societies, county welfare boards, hospital boards, lay associations concerned with mental health and intellectual disabilities as well as labor, business and civic groups, and the general public."

67.    908 KAR 2:030 Section 4 provides guidelines on how the board of directors of entities such as Seven Counties shall operate; Section 5 governs the selection and function of officers of entities such as Seven Counties; Section 6 requires the boards of entities such as Seven Counties to establish certain minimum standing committees; Section 7 permits boards of entities such as Seven Counties to establish special or ad hoc committees; and Section 8 provides

for catchment area boards and the delegation of authority and responsibility to such boards by regional MH-MR boards.

68.    908 KAR 2:030 Section 9 provides that CHFS "may provide state and federal funding to [MH-MR] boards by contract."

69.    908 KAR 2:060 provides that the Request for Funding Instructions Manual, the Program Policies and Standards Manual, and the MH-MR Reimbursement Manual, of the dates specified therein, shall each be followed and adhered to by MH-MR boards such as Seven Counties.

70.    908 KAR 2:090 Section 7 provides that "[u]nder the authority of KRS 210.040(7) and (8)" CHFS may delegate to community MH-MR centers "the responsibility to plan, prepare written protocols, and coordinate services as provided within KRS Chapters 202A and 202B and 645.120."

### E.    Commonwealth's Classification of Seven Counties

71.    KRS 210.370 to 210.460, under which Seven Counties is authorized to operate, are contained in Title XVIII, the Public Health provisions of the Kentucky Revised Statutes, which provide for state and regional mental health programs.

72.    Regional MH-MR boards like Seven Counties have inseparable bonds to CHFS and are performing a governmental function.

73.    The applicable Kentucky Administrative Regulations provide evidence of the bond between CHFS and Seven Counties, an example of which is 908 KAR 2:010, Section 1, which provides that "[f]or purposes of implementing the delegated regional responsibilities of the Cabinet for Human Resources, Department for Mental Health and Mental Retardation Services, the regional MH-MR boards shall become the local authority."

17

74.     Local authorities, like Seven Counties, shall have their recognition by CHFS "renewed annually provided the board is in compliance with applicable federal and state laws, and administrative regulations relating to [MH-MR] boards."  908 KAR 2:010, Section 1.

75.     KRS Chapter 65A, described in further detail below, clarifies that entities like Seven Counties, which provide public mental health services, are in fact "special purpose governmental entities" that will be subject to auditing by the Department of Local Government.

76.     Seven Counties has a number of contracts with CHFS, many of which are categorized as and titled a "Memorandum of Agreement Between A State Agency and Other Governmental Body or Political Subdivision, " copies of which are available from the open door transparency section of Kentucky's finance and administration website.  *See* Contract for Division of Maternal and Child Health, excerpts attached as Exhibit O; *see also* Kentucky's Transparency Portal, http://opendoor.ky.gov/search/Pages/contractsearch.aspx (last visited May 3, 2013) (allowing visitors to download public contracts).

77.     Seven Counties contracts to provide services to other governmental entities, such as the Division of Behavioral Health, the Division of Maternal and Child Health, Division of Protection and Permanency—Hotline Services, Kentucky Correctional Psychiatric Center, and Central State Hospital.

78.     Seven Counties' contracts with the Commonwealth are additional indicia of the Commonwealth's classification of Seven Counties as a governmental entity.

79.     Kentucky, through its Governor, Attorney General and General Assembly, classifies MH-MR boards like Seven Counties as agencies, departments, instrumentalities, political subdivisions and special purpose governmental entities of the Commonwealth.

**F.      Current Eligibility of MH-MR Boards for Participation in KERS**

80.      KERS is a tax qualified governmental defined benefit plan under 26 U.S.C. §§ 401(a) and 414(d).

81.      Participation in KERS is limited to employees of the Commonwealth of Kentucky, its political subdivisions, departments, agencies and instrumentalities.

82.      Pursuant to KRS 61.520(1) only a "department," as that term is defined in KRS 61.510(3), determined by the Board of Trustees of KRS to be eligible and qualified for participation shall participate in KERS when the Governor by appropriate executive order directs such department to participate in the system. *See also* KRS 61.645.

83.      Pursuant to KRS 61.510(3) a "department" means "any state department or board or agency participating in [KERS] in accordance with appropriate executive order, as provided in KRS 61.520."

84.      Also pursuant to KRS 61.510(3), "[f]or purposes of KRS 61.510 to 61.705, the members, officers, and employees of the General Assembly and any other body, entity, or instrumentality designated by executive order by the Governor, shall be deemed to be a department, notwithstanding whether said body, entity, or instrumentality is an integral part of state government."

85.      The membership of KERS is comprised of "[a]ll persons who become employees of a participating department after the date such department first participates in the system . . . ." KRS 61.525(1).

86.      Similarly, the "employees" of an "employer," such terms being defined in KRS 61.510(5) and (6), are eligible for membership in KERS pursuant to KRS 61.525.

87.      There are approximately 349 agencies actively participating in KERS.

19

88.    Examples of participating agencies include 61 county attorneys, 57 health departments, 135 P1 state agencies (agencies whose employees are compensated through the Kentucky Personnel Cabinet), 39 Non-P1 state agencies, and 7 universities.

89.    By virtue of KRS 61.515, KRS serves as the administrator of retirement benefits for public employees that are participating members of KERS, which is a traditional function of state government.

### G.    Pre-1974 History of Participation of MH-MR Boards in KERS

90.    In 1966 the Governor of Kentucky issued an Executive Order, effective July 1, 1966, that "community mental health boards are permitted to become and are participating agencies in [KERS]."  Ky. Exec. Ord. 66-378, June 23, 1966, ¶ 5, attached as Exhibit C.

91.    Kentucky Region Eight Mental Health-Mental Retardation Board, Inc. ("Region Eight") was created under Chapter 210 of the Kentucky Revised Statutes in 1966.

92.    In 1973, the Kentucky Attorney General issued an opinion in response to a request from the Social Security Administrator for Kentucky "as to whether MH-MR boards are political subdivisions under Kentucky law."  Ky. OAG 73-203 at 1, attached as Exhibit H.

93.    The Kentucky Attorney General's office concluded that "[i]t is our opinion that [MH-MR] boards, when considered in light of KRS 210.370 to 210.460, clearly are instrumentalities of the Commonwealth and therefore are a political subdivision for purposes of KRS 61.420."  Ky. OAG 73-203 at 2, attached as Exhibit H.

94.    KRS 61.420(5) provides that the term "political subdivision" includes "in addition to counties, municipal corporations and school districts, . . . instrumentalities of the Commonwealth, or one (1) or more of its political subdivisions, or of the Commonwealth and one (1) or more of its political subdivisions, and any other governmental unit thereof."

20

95.    The Kentucky Attorney General's office has noted that "[i]t is evident from a reading of [KRS 210.370 to 210.460] that these boards [such as Seven Counties] perform a public function which to a significant degree are financed by the Commonwealth of Kentucky and substantially supervised by the Commissioner of Mental Health of the Commonwealth of Kentucky." Ky. OAG 73-203 at 1, attached as Exhibit H.

**H.    Kentucky Court of Appeals' 1974 Decision**

96.    Region Eight,[5] along with two other community MH-MR boards (three of the total sixteen MH-MR boards then existing in Kentucky), resisted participating in KERS, which ultimately resulted in a suit that reached the Kentucky Court of Appeals in 1974.  *See Ky. Region Eight Mental Health-Mental Retardation Board, Inc. v. Commonwealth of Ky.*, 507 S.W.2d 489 (Ky. 1974); *see also* Ky. Exec. Ord. 69-667, Sept. 11, 1969, attached as Exhibit D; *see also* 1980-1981 Ky. Op. Atty. Gen. 2-276, Ky. OAG 80-349, 1980 WL 102566 (Ky. A.G.), attached as Exhibit E (referencing the 1966 and 1969 Executive Orders and noting that employees of Kentucky Region Eight sued to not participate in KERS).

97.    The *Kentucky Region Eight* suit was brought because three MH-MR boards, including Region Eight, had refused to remit contributions to KERS despite their membership in KERS under the 1966 Executive Order then in effect.  *See* Ky. Exec. Ord. 74-587, Aug. 6, 1974, attached as Exhibit I.

98.    The *Kentucky Region Eight* decision explained that the regional MH-MR boards are private nonprofit corporations that "are eligible for state grants under KRS 210.370 to 210.460 as well as federal grants under the Community Mental Health Centers Act, private donations, local government contributions, etc."  *Ky. Region Eight*, 507 S.W.2d at 490.

---

[5] Region Eight later changed its name to River Region Mental Health-Mental Retardation Board, Inc.  *See* General Information for River Region Mental Health-Mental Retardation Board, Inc. obtained from the Kentucky Secretary of State Online Business Organization Search, available at: https://app.sos.ky.gov/ftsearch/.

99.    The *Kentucky Region Eight* decision further explained, historically, that:

> Statements from studies predating the enactment of KRS 210.370
> to 210.460 were to the effect that use of nonprofit corporations to
> implement the program was intended to be an alternative to use of
> direct state agencies; that the corporations were to be treated as
> being separate and apart from state government in order to
> encourage local community support, and to qualify fully for receipt
> of federal grants and tax-deductible charitable donations.

*Ky. Region Eight*, 507 S.W.2d at 490.

100.    Thus, under the version of KRS 61.510 then in effect (March 1, 1974), the Kentucky Court of Appeals found, solely for purposes of participation in KERS, that regional MH-MR boards were not state agencies because they were not "such integral parts of state government as to come within regular patterns of administrative organization and structure and to be subject to standard personnel policies having general application in the administration of government." *Ky. Region Eight*, 507 S.W.2d at 490-91.

101.    The *Kentucky Region Eight* decision was issued prior to Seven Counties' existence, prior to the Kentucky General Assembly's amendment to KRS 61.510(3) and the resultant Kentucky Attorney General Opinions and Executive Orders issued thereunder, and prior to the enactment of the Bankruptcy Code in November, 1978, which generally took effect on October 1, 1979.

### I.    Kentucky General Assembly's Response to *Kentucky Region Eight*

102.    In direct response to the decision in *Kentucky Region Eight*, the Kentucky General Assembly amended KRS 61.510(3), effective on March 26, 1974, to state that "any other body, entity, or instrumentality designated by Executive Order by the Governor, shall be deemed to be a department" for purposes of KRS 61.510 to 61.705 "notwithstanding whether said body, entity,

or instrumentality is an integral part of state government." KRS 61.510(3); *see also* Ky. Exec. Ord. 74-587, Aug. 6, 1974, attached as Exhibit I.

103.    KRS 61.520(3) was also amended to provide that all executive orders issued under said section since July 1, 1956, deeming MH-MR boards participants of KERS, were thereby ratified by the Kentucky General Assembly and each board was thereby "declared to be a participating department under [KERS]." KRS 61.520(3).

104.    Pursuant to the 1973 Kentucky Attorney General Opinion and the Kentucky General Assembly's response to *Kentucky Region Eight*, entities like Seven Counties have been since referred to as both "instrumentalities" and "departments" of the Commonwealth.

**J.      River Region's Participation in KERS (1974-1978)**

105.    On August 6, 1974, the Governor of Kentucky issued Executive Order 74-587 whereby, pursuant to KRS 61.510(3), he designated "River Region Mental Health-Mental Retardation Board [f/k/a Region Eight] as a participating department in the [KERS] effective August 1, 1974." *See* Ky. Exec. Ord. 74-587, Aug. 6, 1974, attached as Exhibit I.

106.    Following the 1974 decision by the Kentucky Court of Appeals, Region Eight participated in KERS under revised statutes and a subsequent Executive Order until 1978. *See* Ky. Exec. Ord. 74-587, Aug. 6, 1974, attached as Exhibit I.

107.    River Region Mental Health-Mental Retardation Board, Inc. filed for Chapter XI relief under the Bankruptcy Act of 1898 on February 23, 1978, and on July 10, 1978 filed a motion to convert to a liquidation proceeding—a "straight bankruptcy." *See Halikas v. River Region Mental Health-Mental Retardation Board*, 667 F.2d 1026, 1981 U.S. App. LEXIS 16661, at *1 (6th Cir. Oct. 22, 1981).

108.    River Region was dissolved and ceased participating in the KERS as of July 31, 1978.[6]

109.    Upon information and belief, Seven Counties purchased certain assets of River Region from its bankruptcy estate.

110.    On or about July 14, 1978, the then Chairman of the Board of Seven Counties sent a letter to the Kentucky Retirement System stating that "[e]ffective August 1, 1978, Seven Counties Services, Inc. will be designated by the Department of Human Resources as the recognized regional mental health-mental retardation board for the counties previously served by River Region." *See* Ltr. to KRS, July 14, 1978, attached as Exhibit P.

111.    The July 14, 1978 letter from Seven Counties to KRS expressly states that "Seven Counties Services is completely separate and independent of River Region" and that "Seven Counties Services will not accept any liabilities of River Region." *See* Ltr. to KRS, July 14, 1978, attached as Exhibit P.

112.    Seven Counties neither combined nor merged with River Region and is neither a continuation of, nor a successor–in–interest to, River Region.

113.    CHFS designated Seven Counties as the regional MH-MR Board for the counties previously served by River Region effective as of August 1, 1978.

**K.      Seven Counties' Participation in KERS (1979-Present)**

114.    On October 4, 1978, the Office of the Kentucky Attorney General issued an opinion concluding that Seven Counties, which was "incorporated in order to fill the void left by

---

[6] The records for River Region's bankruptcy, as maintained by the Bankruptcy Court, have since been destroyed. *In re River Region Mental Health-Mental Retardation Board, Inc.*, Case No. BK78-00193-L (Bankr. W.D. Ky. 1978) (Bland, J.). However, certain of the records are available as part of the record in the appeal in *Halikas v. River Region Mental Health-Mental Retardation Board*, 667 F.2d 1026, 1981 U.S. App. LEXIS 16661, at *1 (6th Cir. Oct. 22, 1981), some of which were filed as Exhibits to the Debtor's Objection to Emergency Motion of KRS and KERS to Compel Debtor to Comply with its Obligations to Make Ongoing Statutorily Required Payments of Employer and Employee Contributions [Docket No. 90].

the recent bankruptcy of River Region Mental Health-Mental Retardation Board, Inc.," could begin to participate in KERS upon the issuance of an Executive Order.  Ky. OAG 78-685, 1978 WL 26239 (Ky. A.G.), attached as Exhibit J.

115.    On January 24, 1979, pursuant to KRS 61.510(3) and following the Kentucky Attorney General's opinion that Seven Counties could participate in KERS, the Governor of Kentucky issued Executive Order 79-78 bringing Seven Counties into KERS.  Ky. OAG 78-685, 1978 WL 26239 (Ky. AG), attached as Exhibit J; Exec. Ord. 79-78, attached as Exhibit K.

116.    Seven Counties has, by statute, opinion of the Kentucky Attorney General and executive order of the Governor of Kentucky, been deemed a "department" of the Commonwealth of Kentucky for purposes of its employees participating in KERS. KRS 61.510(3), 210.370 to 210.460; KRS Ky. OAG 78-685, 1978 WL 26239 (Ky. AG), attached as Exhibit J; Exec. Ord. 79-78, attached as Exhibit K.

117.    Under Executive Order 79-78 and KRS 61.510(3), Seven Counties is expressly designated as a "department" of the Commonwealth of Kentucky that is eligible to participate in KERS.

118.    The employees of Seven Counties have continuously participated in KERS for the past 34 years since Executive Order 79-78 was issued, up until the Petition Date.

119.    Starting in May 2013, Seven Counties failed to remit the statutorily required employee and employer contributions and to file the required reports for 1,004 of its 1,318 employees.

**L.    Kentucky Attorney General Opinions on Seven Counties**

120.    Seven Counties has been determined by the Kentucky Attorney General to be a "public agency, " as defined in KRS 61.870(1)(h) for open records purposes because it "receives

more than 25 percent of its funds from state or local authority" and "its employees' salaries are . . . primarily funded through state and local government revenue . . . ."  Ky. Op. Atty. Gen 02-ORD-222, 2002 WL 34106496, at 4, 7, attached as Exhibit G.[7]

121.    The Kentucky Attorney General has twice reached this same conclusion in regard to Seven Counties, and once in regard to River Region Mental Health-Mental Retardation Board. *See* Ky. Op. Atty. Gen 02-ORD-222, 2002 WL 34106496, at 4 (citing the "office's decision in 97-ORD-140" as "controlling on the issue of Seven Counties' status as a public agency for open records purposes" and citing OAG 76-648 for the same conclusion in regard to River Region), attached as Exhibit G.

122.    Based on the foregoing matters dating back to the 1970's, it has long since been settled that the Kentucky General Assembly, the Governor of Kentucky, and the Attorney General of Kentucky clearly consider Seven Counties, and similar regional MH-MR boards, to be instrumentalities and departments of the Commonwealth of Kentucky, and therefore governmental entities.

**M.    Seven Counties' Traditional Governmental Attributes and Powers— KRS Chapter 210**

123.    Seven Counties derives its authority to administer mental health and development disability programs and clinics from Chapter 210, KRS.

124.    Chapter 210, KRS falls under Title XVIII, the Public Health Chapter.

125.    Seven Counties is a creature of specific legislative enactment, especially KRS 210.370 and KRS 210.380, by which it is authorized to administer programs and services for purposes of public health.

---

[7] In 2002, Seven Counties received 42% of its total funding from the Kentucky Department of Mental Health and Retardation/CHFS and 7% of its total funding from state or local grants.  *See* Ky. Op. Atty. Gen 02-ORD-222, 2002 WL 34106496, at 4, attached as Exhibit G.  In 2011, according to its Form 990 filed with the Internal Revenue Service, Seven Counties received approximately 49% of its revenue from state and local governments.

126.    Entities such as Seven Counties have a predominantly public purpose for existence, providing services involving mental health and intellectual disabilities. *See, e.g.*, Ky. OAG 85-99, attached as Exhibit B (stating that "North Central Comprehensive Care . . . is a nonprofit corporation organized to carry out public purposes involving mental health and mental retardation, pursuant to KRS 210.370 et seq., located in Washington County and serving Washington County residents.").

127.    As noted in the *Kentucky Region Eight* decision, regional mental health and intellectual disability boards, such as Seven Counties, were established as non-profit corporations, in part, "to qualify for receipt of federal grants and tax-deductible charitable donations."  507 S.W.2d at 490.  Conversely, they are not set up as non-profit corporations because of any lacking in governmental purpose.

128.    Seven Counties receives a significant percentage of its funds in the form of tax revenues from CHFS, which is "the primary state agency for operating the public health, Medicaid, certificate of need and licensure, and mental health and intellectual disability programs in the Commonwealth."  KRS  210.420(2), 194A.010(1).

129.    As set forth in Seven Counties' 2012 Form 990, in 2011 Seven Counties' total revenue was $99,196,844, of which $47,789,385 was from government agencies, $46,337,114 was from Medicare/Medicaid, $1,898,936 was from government grants, and $1,438,372 was from other programs.  Only $1,217,181 was from private pay and insurance.[8]

130.    In its 2012 Form 990, Seven Counties represented to the Internal Revenue Service that the reason for its public charity status is that it is "[a]n organization that normally receives a

---

[8] The remainder of the $99,196,844 total revenue was from investment income, miscellaneous, income from meals, and vending income.

substantial part of its support from a governmental unit or from the general public described in section 170(b)(1)(A)(vi)."

131.    Seven Counties is a tax-exempt entity.

132.    Seven Counties has the power of a governing body of a taxing district for mental health or individuals with an intellectual disability under KRS 210.470.

133.    Under KRS 210.480, Seven Counties has the power, with the approval of CHFS, to "request the fiscal courts in each of the member areas which have not contributed a sufficient proportionate share of the cost of the program, to impose a special ad valorem tax for mental health or individuals with an intellectual disability in such amount that it deems sufficient, but not in excess of four cents ($0.04) per one hundred dollars ($100) of full assessed valuation."

134.    In recent years, Seven Counties has asserted, in the courts of Kentucky, that it has sovereign immunity.

135.    In September 2012, a lawsuit was filed in the Commonwealth of Kentucky Jefferson Circuit Court charging that Seven Counties engaged in discrimination and unlawful discharge of a former employee.  In defense, Seven Counties asserted:

> Defendant pleads and relies upon the doctrine of sovereign immunity as a complete or partial bar to the Plaintiff's complaint.

*See* Jefferson Circuit Court Certified Copy of Complaint and Answer filed in case number 12-CI-05026, styled *Mitchell v. Seven Counties Services, Inc.*, attached as Exhibit M.

136.    In February of 2011, a lawsuit was filed against Seven Counties Services, Inc. and one of its employees in the Jefferson Circuit Court, alleging multiple tortious offenses including defamation, interference with contractual relations, and intimidating a witness.  In its fifth affirmative defense, Seven Counties asserted:

> The Plaintiff's claims against the Defendant are barred, in whole or in part, by the doctrine of qualified immunity.

*See* Jefferson Circuit Court Certified Copy of Complaint and Answer filed in case number 11-CI-01381, styled *Williams v. Seven Counties Services, Inc. and Dr. Vital N. Shah*, attached as Exhibit N.

137.    In asserting the defense of "qualified immunity," it is apparent that Seven Counties considers its employees to wear the hat of a "public officer" performing governmental work, immune from personal liability.

### N.    Recent Legislation— KRS Chapter 65A—Recognizing and Governing "Special Purpose Governmental Entities"

138.    Effective as of March 21, 2013, the Kentucky General Assembly enacted KRS Chapter 65A, which specifically defines "public mental health" as one of "the types of public services that may be provided by special purpose governmental entities . . . ."  2013 Kentucky Acts Ch. 40 (HB 1), § 1(8)(c)(5).

139.    KRS Chapter 65A creates and defines a new category of entity, the "special purpose governmental entity," which "exist[s] to serve a public purpose and must be subject to standards of accountability so that the public, other local governmental entities, and state government can be apprised of their status and activities."  2013 Kentucky Acts Ch. 40 (HB 1), § 1(8)(a)-(c).

140.    Under KRS Chapter 65A, a "special purpose governmental entity" means:

any agency, authority, or entity created or authorized by statute which:

1.    Exercises less than statewide jurisdiction;

2.    Exists for the purpose of providing one (1) or a limited number of services or functions;

3.    Is governed by a board . . . that is separate from the state and the governing body of the city, county, or cities and counties in which it operates; and

29

       4.  a.  Has the independent authority to generate public funds; or

       b.  May receive and expend public funds, grants, awards, or appropriations from the state, from any agency, or authority of the state, from a city or county, or from any other special purpose governmental entity.

2013 Kentucky Acts Ch. 40 (HB 1), § 1(8)(a)-(b).

141.    The term "special purpose governmental entity" is defined to "include entities meeting the requirements established by paragraph (a) of this subsection, whether the entity is formed as a nonprofit corporation under KRS Chapter 273, pursuant to an interlocal cooperation agreement under KRS 65.210 to 65.300, or pursuant to any other provision of the Kentucky Revised Statutes."  2013 Kentucky Acts Ch. 40 (HB 1), § 1(8)(b).

142.    Public mental health is specifically included as the type of service provided by a "special purpose governmental entity."  2013 Kentucky Acts Ch. 40 (HB 1), § 1(8)(a)-(c).

143.    An entity like Seven Counties that provides public mental health services qualifies as a "special purpose governmental entity" which exists "to serve a public purpose" and "must be subject to standards of accountability" to the public, local government and state government.  2013 Kentucky Acts Ch. 40 (HB 1).

144.    Due to the enactment of Chapter 65A, Seven Counties and other such "special purpose governmental entities" now have reporting obligations to the Department of Local Government ("DLG") established under KRS 147A.002.  2013 Kentucky Acts Ch. 40 (HB 1), § 1(2), and such reporting "shall be in addition to, and shall not supplant or replace any reporting or filing requirements established by other provisions of the Kentucky Revised Statutes."  2013 Kentucky Acts Ch. 40 (HB 1), § 2(2)(c).

### O.      Employee and Employer Contributions to KERS

145.      The assets of KERS are known as the "Kentucky Employees Retirement Fund" and are deemed to be trust funds that are to be held and applied solely for its members and beneficiaries as provided in KRS 61.510 to 61.705.  KRS 61.515, 61.645, 61.701.

146.      The Board of Trustees of KERS, which administers KERS, oversees KRS in a fiduciary capacity, and administers the plan "[s]olely in the interest of the members and beneficiaries . . . ."  KRS 61.650(1)(c)(1).

147.      Contributions and cash securities held by KERS are exempt from state, county, and municipal tax, and are not subject to execution, attachment, garnishment, or any other process, and shall not be assigned.  KRS 61.690(1).

148.      In consideration of the contributions by the current and former employees who are members in KERS "and in further consideration of benefits received from the state" from such members' employment, the statutory provisions governing KERS, KRS 61.510 to 61.705, constitute a statutory "inviolable contract" of the Commonwealth and the participating employees, and the benefits provided for thereunder shall "not be subject to reduction or impairment by alteration, amendment, or repeal."  KRS 61.692; *see also Jones v. Bd. of Trs. of Ky. Ret. Sys.*, 910 S.W.2d 710, 712 (Ky. 1995).

149.      KERS receives both employee and employer contributions as set forth in Chapter 61 of the Kentucky Revised Statutes, under which KRS 61.510 to 61.705 pertain to KERS.

150.      Employee contributions to KERS are 5% of each employee's creditable compensation.[9]  KRS 61.560(1).

---

[9] For employees that started on and after September 1, 2008, there is an additional 1% health insurance contribution. KRS 61.637.

151.    Employee contributions are "picked up" by the employer pursuant to KRS 61.560(4), meaning that the contributions are withheld before tax. *See also* KRS 61.543.

152.    Each employer participating in KERS is required to pay employer contributions pursuant to KRS 61.565(1).

153.    The specific amount of the employer contribution has been determined annually by the KRS Board of Trustees pursuant to KRS 61.565(3).

154.    Prior to the fiscal year beginning July 1, 2014, the specific amount of the employer contribution has been determined by the General Assembly to be a percentage of the actuarially required contribution.    KRS 61.565(5).    The current amounts are discussed at paragraphs 158-160.

**P.    The "Inviolable Contract" between Kentucky and Seven Counties' Employees**

155.    In 1972, the General Assembly of Kentucky enacted KRS 61.692 which, as currently in effect,[10] provides:

> It is hereby declared that in consideration of the contributions by the members and in further consideration of benefits received by the state from the member's employment, KRS 61.510 to 61.705 shall, except as provided in KRS 6.696 effective September 16, 1993, constitute an inviolable contract of the Commonwealth, and the benefits provided therein shall, except as provided in KRS 6.696, not be subject to reduction or impairment by alteration, amendment, or repeal.

156.    In addition to KRS 61.692, Section 19 of the Kentucky Constitution, which is part of the Bill of Rights, states that no law impairing the obligation of contract shall be enacted.

---

[10] On April 4, 2013, the Governor of Kentucky signed SB 2 into law and Section 70 thereof will amend KRS 61.692; however, SB 2 is presently not set to take effect until July 1, 2013. *See* 2013 Ky. Acts, Chp. 12. In any event, the amendments to KRS 61.692 would not change anything for members (employees) who began participating in KERS prior to January 1, 2014.

157.    There is an "inviolable contract" between the employees of Seven Counties, which are KERS members, and the Commonwealth of Kentucky.

### Q.    Seven Counties' Statutory Obligations as a Department Participating in KERS

158.    As a state department participating in KERS, Seven Counties is required to make contributions to KERS under KRS 61.543 and 61.560 (the "employee contribution") and under KRS 61.565 (the "employer contribution").

159.    Currently, the KERS employer contribution rate is an amount equal to 23.61% of each employee's "creditable compensation," as defined in KRS 61.510(13).

160.    The KERS employer contribution rate will increase to 26.79% on July 1, 2013.

161.    With respect to the employee contribution, KRS 61.560 provides, in relevant part, that:

> (1)    Each employee, shall, commencing on August 1, 1986, contribute for each pay period for which he receives compensation five percent (5%) of his creditable compensation . . . .
>
> (2)    Each employer shall cause to be deducted from the creditable compensation of each employee for each and every payroll period the contribution payable by each such employee as provided in KRS 61.515 to 61.705.
>
> *        *        *
>
> (4)    Each employer shall, solely for the purpose of compliance with Section 414(h) of the United States Internal Revenue Code, pick up the employee contributions required by this section for all compensation earned after August 1, 1982, and the contributions so picked up shall be treated as employer contributions in determining tax treatment under the United States Internal Revenue Code and KRS 141.010(10). . . .[11]

---

[11] KRS 61.543(1)

162.    The employee contribution is "picked up" by the employer pursuant to KRS 61.560(4).

163.    With respect to the employer contribution, KRS 61.565 provides, in relevant part, that:

> (1)    Each employer participating in the State Police Retirement System as provided for in KRS 16.505 to 16.652, each employer participating in the County Employees Retirement System as provided for in KRS 78.510 to 78.852, and each employer participating in the Kentucky Employees Retirement System as provided for in KRS 61.510 to 61.705 shall contribute annually to the respective retirement system an amount equal to the percent, as computed under subsection (2) of this section, of the creditable compensation of its employees to be known as the "normal contributions," and an additional amount to be known as the "actuarially accrued liability contribution" which shall be computed by amortizing the total unfunded actuarially accrued liability over a period of thirty (30) years using the level-percentage-of-payroll amortization method.

164.    KRS 61.675(3) provides that the foregoing shall be paid by the 10th of each month:

> (3)    (a)    Any agency participating in the Kentucky Employees Retirement System which is not an integral part of the executive branch of state government shall file the following at the retirement office on or before the tenth day of the month following the period being reported:
>
> 1.    The employer and employee contributions required under KRS 61.560, 61.565, and 61.702;
>
> 2.    The employer contributions and reimbursements for retiree health insurance premiums required under KRS 61.637; and
>
> 3.    A record of all contributions to the system on the forms prescribed by the board.

34

> (b)     If the agency fails to file all contributions and reports on or before the tenth day of the month following the period being reported, interest on the delinquent contributions at the actuarial rate adopted by the board compounded annually, but not less than one thousand dollars ($1,000), shall be added to the amount due the system.  (Emphasis added).

165.    Contributions by Seven Counties, as an employer participating in KERS, are mandatory as demonstrated by the use of the word "shall" in KRS 61.560, 61.565, 61.575, and 61.675, and the penalty imposed by KRS 61.675(3)(b) for late payments.  *See* KRS 446.010(39).[12]

166.    Title 105 of the Kentucky Administrative Regulations applies to participating departments and, amongst other things, 105 KAR 1:140 sets forth the administrative duties of the department participating in KERS.

167.    105 KAR 1:140 relates to various provisions of KRS Chapter 61 and, among other things, sets forth the requirements for how Seven Counties must file its reports and make the employee and employer contributions to KERS.

168.    Seven Counties stated in open court on April 23, 2013, at the interim hearing on use of cash collateral, that it did not intend to make any payments to KERS for amounts that relate to the postpetition period; however, in open court on May 7, 2013, Seven Counties stated it would make payments to KERS for employees who work at Central State Hospital ("CSH") and Kentucky Correctional Psychiatric Center ("KCPC").

169.    The first date for Seven Counties to make the required contributions to KERS and file appropriate reports for the postpetition period was May 10, 2013.

---

[12] KRS 446.010(39) provides that "As used in the statute laws of this state, unless the context requires otherwise . . . 'shall' is mandatory."

170.    Seven Counties did not make all statutorily required employee and employer contributions to KERS on May 10, 2013; rather, Seven Counties paid and reported amounts relating only to employees who work at CSH and KCPC.  This was for 314 employees combined.

171.    In the previous monthly report filed on or about April 10, 2013, Seven Counties submitted contributions and reports for all of its employees, a total of 1,318—1,004 more employees than reported to KERS on May 10, 2003.  For those 1,004 employees, Seven Counties assigned an "employment end date" of April 6, 2013 in its report filed May 10, 2013.

172.    Seven Counties' next date for making the statutorily required contributions and filing appropriate reports is June 10, 2013.

173.    Seven Counties has said it will not make the payments for all employees on June 10, 2013, or at any subsequent point in time.

## COUNT I
### (Declaratory Judgment that Seven Counties is a "Governmental Unit")

174.    KERS restates the allegations contained in the paragraphs above as if fully rewritten herein.

175.    The legislative history to 11 U.S.C. § 101(27) confirms that the term "governmental unit" was intended to be used "in the broadest sense."  H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 311 (1977), excerpts attached as Exhibit L.

176.    The legislative history to 11 U.S.C. § 101(27) also states that the key to determining whether an entity is simply a non-governmental corporation, which has no connection to a State or local government other than the granting of its charter or license, or a "governmental unit," is that the relationship between the State and local government and the entity "must be an active one in which the department, agency, or instrumentality is actually

36

carrying out some governmental function." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 311 (1977), excerpts attached as Exhibit L; *see also In re Arsi*, 354 B.R. 770, 773 (Bankr. D.S.C. 2006).

177. The "definition of 'governmental unit' [set forth in 11 U.S.C. § 101(27)] is broader than the definition of 'municipality' [set forth in 11 U.S.C. § 101(40)]." *Hosp. Auth. of Charlton Cnty.*, 2012 Bankr. LEXIS, at *14.

178. An "entity may be a governmental unit but not a municipality." *Hosp. Auth. of Charlton Cnty.*, 2012 Bankr. LEXIS 3042, at *14-15 (citing 11 U.S.C. § 101(27)).

179. "The reality is that not every entity is entitled to relief from its debts through bankruptcy" because there are entities, such as governmental units, that are not eligible for either chapter 9 or chapter 11 relief, and Congress did not intend for the Bankruptcy Code to solve "'the financial problems of governmental units.'" *Hosp. Auth. of Charlton Cnty.*, 2012 Bankr. LEXIS 3042, at *24 (citing *In re N. Mariana Islands Ret. Fund*, No. 12-00003, 2012 U.S. Dist. LEXIS 131709, at *5 (Bankr. D. N. Mar. I. June 13, 2012) (holding that the Northern Mariana Islands Retirement Fund was a governmental unit that could not file a chapter 11 bankruptcy)).

180. In defining the terms "governmental unit" and "municipality" Congress intended that the problems of governmental units that are not municipalities authorized to file for chapter 9 relief under state law would be left to local government. *In re N. Mariana Islands Ret. Fund*, No. 2012 U.S. Dist. LEXIS 131709, at *9.

181. The States themselves, as well as their agencies, departments and instrumentalities, cannot file bankruptcy, as opposed to municipalities, commonly cities and their agencies, departments and instrumentalities, which may be able to seek relief under chapter 9 if they satisfy 11 U.S.C. § 109(c).

182.    With respect to departments and instrumentalities of States and Commonwealths, "courts routinely look to non-bankruptcy case law, policy and legislation to determine 'governmental unit' status for purposes of § 101(27) of the Bankruptcy Code."   Marvin E. Sprouse, *Defining the "Governmental Unit,"* 23-3 Am. Bankr. Inst. J. 8 (April 2004).

183.    Bankruptcy courts have looked at three main categories of factors to determine whether an entity is a governmental unit for purposes of eligibility to be a debtor, including: "1) the extent to which the entity possesses traditional government powers or attributes; 2) the extent of control over the entity possessed by the city, state, or county; and 3) the state's classification of the entity."   *In re Las Vegas Monorail, Co.*, 429 B.R. at 795; *Hosp. Auth. of Charlton County*, 2012 Bankr. LEXIS 3042, at *14.

184.    The key to making the governmental unit determination is to assess the relationship between the State and local government and the entity, which "must be an active one in which the department, agency, or instrumentality is actually carrying out some governmental function."   H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 311 (1977), excerpts attached as Exhibit L.

185.    Under Kentucky law, whether an entity is a corporation, by itself, has no effect on whether it is considered an agent or political subdivision of state government.

186.    A Kentucky non-profit corporation has been recognized by the highest court of Kentucky to qualify as a governmental unit entitled to sovereign immunity.   *See Comair, Inc. v. Lexington-Fayette Urban County Airport Corp.*, 295 S.W.3d 91, 99, 102-04 (Ky. 2009) (holding that both the Lexington-Fayette Airport Corporation, a non-profit, non-stock corporation, and its Board were agencies of the Lexington-Fayette Urban County Government because they exercised a governmental function).

187.    Seven Counties is a non-profit corporation formed to have the powers and purposes set forth in KRS 210.370 to 210.460, and is expressly identified as an "instrumentality" and "department" of the Commonwealth of Kentucky.  KRS 61.420(5); Ky. OAG 73-203 at 2, attached as Exhibit H.

188.    Seven Counties is tax-exempt, it has the power to tax as a taxing district, it receives significant amounts of tax revenues, and it is designated by statute as a special purpose governmental entity.  KRS 194A.010(1), 210.410-210.440, 210.460-210.480; KRS Chapter 65A (2013 Ky. Acts, Ch. 40).

189.    The Kentucky Attorney General has determined that MH-MR boards are political subdivisions and subject to the Kentucky Open Records and Open Meetings Acts.  Ky. OAG 73-203, 78-685, 02-ORD 222.

190.    The Kentucky Attorney General has also concluded, with respect to entities like Seven Counties, as follows:

> KRS 210.370 to 210.460 are the appropriate statutes under which the [MH-MR] boards are formed.  It is evident from a reading of the aforementioned statutes that these boards perform a public function which to a significant degree are financed by the Commonwealth of Kentucky and substantially supervised by the Commissioner of Mental Health of the Commonwealth of Kentucky.

Ky. OAG 73-203 at 1, attached as Exhibit H.

191.    The Kentucky Auditor of Public Accounts has the authority to audit Seven Counties.  KRS 43.010-43.200.

192.    Seven Counties has pled the defense of sovereign immunity in at least two recent cases in Jefferson Circuit Court, indicating that it believes it is a governmental unit.

193.    As codified in the Kentucky Revised Statutes, which were amended to specifically keep entities like Seven Counties in KERS, and the opinions of the Kentucky Attorney General's Office, Seven Counties is both a "department" and an "instrumentality of" the Commonwealth of Kentucky.

194.    Under 908 KAR 2:010 Section 1 MH-MR boards such as Seven Counties are described as agencies and local authorities.

195.    The facts concerning Seven Counties' creation, purpose, government attributes and powers, government function, funding, the Commonwealth's control over the same via the CHFS, Seven Counties' relationship with the Commonwealth via CHFS, and the Commonwealth's classification of entities such as Seven Counties, collectively confirm that Seven Counties, as an instrumentality and department of the Commonwealth is "carrying out some governmental function." *See, e.g.*, *Hosp. Auth. of Charlton Cnty.*, 2012 Bankr. LEXIS 3042, at *15-24 (using the factors identified in *In re Las Vegas Monorail, Co.*, 429 B.R. at 795 to determine "whether an entity is a governmental unit.").

196.    Seven Counties' 34 years of participation in KERS, an arm of the Commonwealth established for the sole purposes of receiving, investing and paying out funds to employees and retirees of the Commonwealth and its political subdivisions, and department, agencies and instrumentalities of the Commonwealth and its political subdivisions in accordance with law, also confirms that Seven Counties is a governmental unit.

197.    Based on all of the foregoing, KERS seeks an order declaring that Seven Counties is a "governmental unit," under 11 U.S.C. § 101(27).

## COUNT II
### (Dismissal of Chapter 11 Bankruptcy Case)

198.    KERS restates the allegations contained in the paragraphs above as if fully rewritten herein.

199.    Under the Bankruptcy Code, Congress specifically excluded "governmental units" as entities entitled to be debtors under chapter 11.

200.    In enacting the Bankruptcy Code Congress recognized that the financial affairs of "governmental units," as the financial affairs of the states, should be resolved by state government, not federal courts.

201.    Only "a person that may be a debtor under chapter 7 . . . may be a debtor under chapter 11 of this title." 11 U.S.C. § 109(d).

202.    As defined in 11 U.S.C. § 101(41), the term "person" does not include "governmental unit" and therefore a governmental unit may not be a debtor under chapter 11.

203.    The term "governmental unit" is defined broadly to mean:

> United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States . . . , a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

11 U.S.C. § 101(27); *see U.S. Trustee v. Hosp. Auth. of Charlton Cnty. (In re Hosp. Auth. of Charlton Cnty.)*, Case No. 12-50305, 2012 Bankr. LEXIS 3042, at *12-13 (Bankr. S.D. Ga. July 3, 2012) (quoting the legislative history of the term "governmental unit" and stating that it is defined "in the broadest sense.").

204.    Seven Counties is a "governmental unit" as that term is defined in 11 U.S.C. § 101(27).

41

205.    Because Seven Counties is a "governmental unit," it is not a "person" as defined in 11 U.S.C. § 101(41).

206.    Because Seven Counties is a "governmental unit" and is not a "person," Seven Counties is also not a "debtor" as that term is defined in 11 U.S.C. § 101(13).

207.    Seven Counties is ineligible to be a debtor under chapter 11 of title 11 pursuant to 11 U.S.C. § 109(a), (b) and (d), and therefore the chapter 11 bankruptcy proceeding in which this adversary proceeding is filed must be dismissed.

### COUNT III
**(Injunctive Relief to Compel Seven Counties to Comply with Statutorily Obligations)**

208.    KERS restates the allegations contained in the paragraphs above as if fully rewritten herein.

209.    Seven Counties became a participant in KERS on January 24, 1979, pursuant to KRS 61.510(3), 61.525(1) and Executive Order 79-78.

210.    Seven Counties remains a participant in KERS.

211.    As a department participating in KERS, Seven Counties is subject to the statutory requirements set forth hereinabove to, among other things, withhold employee "pick-ups," submit monthly reports and to make monthly employee and employer contributions to KERS.

212.    Seven Counties' failure to fulfill its statutory obligations as a department participating in KERS harms the employees of Seven Counties who will no longer earn "service credit" towards a retirement date, divesting them from active participation in KERS and the benefits and protections provided, *e.g.*, not having access to full retirement benefits, not being eligible for increases to health insurance benefits, not being able to purchase service credit, and not being covered under a disability retirement plan (for benefits or insurance).

213.    Seven Counties' failure to make the statutorily required contributions also harms the other departments (employers) and members (employees) participating in KERS, as well as KRS as a whole, and the Commonwealth of Kentucky, which together will have to bear the burden of continuing to provide the benefits to current and former employees of Seven Counties entitled to benefits so as not to impair the "inviolable contract" between the Commonwealth of Kentucky and Seven Counties' employees.

214.    Seven Counties is required, by KRS Chapter 61 and the related regulations in KAR Title 105, and by 28 U.S.C. § 959(b) and 11 U.S.C. § 363(d)(1), to make all reports to KERS, to withhold all employee "pick-up" deductions, and to make all regularly-scheduled, statutory contributions (both employee and employer) to KERS.

215.    KERS has no adequate remedy at law and is entitled to a preliminary and permanent injunction compelling Seven Counties to fulfill its obligations under Chapter 61 of the Kentucky Revised Statutes and the related Kentucky Administrative Regulations, including but not limited to the filing of all required reports and payment of all employee and employer contributions.

**WHEREFORE**, KERS seeks judgment in its favor and against Seven Counties:

A.    On Count I, for a declaratory judgment under 28 U.S.C. § 2201 (as directed by the Court in holding the prior Motion to Dismiss in abeyance) for a determination that Seven Counties is a "governmental unit," as defined in 11 U.S.C. § 101(27);

B.    On Count II, for an order dismissing the chapter 11 bankruptcy case in which this adversary proceeding is filed because Seven Counties is not eligible to be a debtor under chapter 11 of title 11 pursuant to 11 U.S.C. § 109(a), (b) and (d);

43

C.      On Count III, for a preliminary and permanent injunction compelling Seven Counties to fulfill its statutory obligations under KRS Chapter 61 and the related regulations in KAR Title 105, including but not limited to the filing of all required reports and payment of all employee and employer contributions; and

D.      For such other and further relief as the Court deems just and proper.

/s/ Daniel R. Swetnam
Daniel R. Swetnam                    (0011022)
Tyson A. Crist                       (0071276)
ICE MILLER LLP
250 West Street, Suite 700
Columbus, OH  43215
(614) 462-2225; Fax:  (614) 224-3568
Email: Daniel.Swetnam@icemiller.com
        Tyson.Crist@icemiller.com

*Counsel for Kentucky Employees Retirement System*

Local Counsel:

Michael V. Brodarick
Andrew D. Stosberg
Lloyd & McDaniel, PLC
11405 Park Road Suite 200
Louisville, KY 40223-0200
(502) 736-4500; Fax: (502) 585-3054
Email: mbrodarick@lloydmc.com
        astosberg@lloydmc.com