NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0419n.06

Nos. 16-5569/5644

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 20, 2020
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| KENTUCKY EMPLOYEES RETIREMENT SYSTEM; BOARD OF TRUSTEES OF KENTUCKY RETIREMENT SYSTEMS, ) ) ) | |
| Appellants-Cross-Appellees, ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| v. ) ) ) | |
| SEVEN COUNTIES SERVICES, INC., ) ) | OPINION |
| Appellee-Cross-Appellant. ) ) | |

**BEFORE:**   COLE, Chief Judge; McKEAGUE and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.**   This case returns to us after the Kentucky Supreme Court responded to our certified question.  For decades, Seven Counties Services, Inc., a nonprofit provider of mental health services, participated in Kentucky's public pension plan, the Kentucky Employees Retirement System (KERS or the System).  Because the rate set for employer contributions drastically increased, Seven Counties tried to rehabilitate its finances by rejecting its relationship with KERS through filing for reorganization under Chapter 11 of the Bankruptcy Code.  The bankruptcy court and the district court both held that Seven Counties is eligible to file under Chapter 11, that the relationship between Seven Counties and KERS is based on an executory contract, and that Seven Counties is not required to make post-petition contributions based on 28 U.S.C. § 959(b).

Nos. 16-5569 / 5644, *Ky. Employees Retirement, et al v. Seven Counties Services, Inc.*

Because the Commonwealth of Kentucky does not exercise the necessary forms of control over Seven Counties, we affirmed the conclusion that Seven Counties is a non-governmental unit, eligible to file. But lacking guidance from the Kentucky state courts, we certified the question of the nature of the relationship—whether contractual or statutory—to the Kentucky Supreme Court. *Kentucky Employees Ret. Sys. v. Seven Ctys. Servs., Inc.*, 901 F.3d 718, 722 (6th Cir. 2018), *certified question answered*, 580 S.W.3d 530 (Ky. 2019). The Kentucky Supreme Court concluded that the relationship between Seven Counties and KERS is "based on a statutory obligation." *Kentucky Employees Ret. Sys.*, 580 S.W.3d at 532. We must now decide whether the statutory obligation to contribute to KERS had to be maintained during the pendency of the bankruptcy proceedings. For the following reasons, we conclude that Seven Counties was required to fulfill that statutory obligation. We therefore **REVERSE** the bankruptcy court's contrary conclusion and **REMAND** for further proceedings consistent with both this opinion and our earlier decision to **AFFIRM** Seven Counties' eligibility to file under Chapter 11.

## I. BACKGROUND

The lengthy background of this litigation is in our prior decision, *Kentucky Employees Ret. Sys.*, 901 F.3d at 722–25, and the facts are also detailed in the Kentucky Supreme Court's opinion, 580 S.W.3d 532–37. The background relevant to this portion of the appeal is as follows.

Seven Counties is a Kentucky nonprofit that has provided mental health services in the area surrounding Louisville, Kentucky since 1978. In its role as a community mental health center (CMHC), Seven Counties provides services to approximately 33,000 people, serving as a safety net for adults and children with mental illnesses, emotional or behavioral disorders, developmental or intellectual disabilities, and alcohol or drug addictions.

Seven Counties has participated in KERS since 1979 when the Governor issued an executive order "designat[ing] Seven Counties Services, Inc. as a participating department in the

Case 3:15-cv-00025-DJH  Document 47  Filed 07/20/20  Page 3 of 20 PageID #: 4300
Case 13-03019-jal  Doc 201  Filed 10/06/20  Entered 10/06/20 14:23:50  Page 3 of 20

Nos. 16-5569 / 5644, *Ky. Employees Retirement, et al v. Seven Counties Services, Inc.*

Kentucky Employe[e]s Retirement System." Ky. Exec. Order No. 79-78 (Jan. 24, 1979). In the past decade, participation in KERS became an increasingly heavy financial burden for Seven Counties. When Seven Counties filed its bankruptcy petition in April 2013, the KERS employer contribution rate was 24% of each employee's "creditable compensation," as defined in K.R.S. § 61.510(13); the contribution rate increased to 27% on July 1, 2013 and rose again to 39% beginning July 1, 2014.

As of June 30, 2013, Seven Counties had 1,219 active employees, including the 926 employees Seven Counties has reported to KERS as inactive despite their continued employment. There were 361 Seven Counties retirees and their surviving beneficiaries receiving an annual KERS benefit. Of Seven Counties' former employees, 283 had earned vested benefits but were not yet receiving them, and there were 1,342 terminated, nonvested employees. Seven Counties represented 3,205 of the 126,466 members in the KERS Non-Hazardous plans, or 2.53% from a straight capitation basis.

At the 24% employer contribution rate, Seven Counties could "perform its charitable mission or pay System contributions that [would] force it to terminate operations," it could not "do both." *In re Seven Ctys. Servs., Inc.* (*Ky. Emps. Ret. Sys. v. Seven Ctys. Servs., Inc.*), 511 B.R. 431, 453 (Bankr. W.D. Ky. 2014), *aff'd in part, rev'd in part*, 550 B.R. 741 (W.D. Ky. 2016).

In the core bankruptcy proceedings, Seven Counties moved to reject its relationship with KERS, arguing that the relationship was based on an executory contract. Seven Counties also commenced an adversary proceeding against KERS, arguing that it should be relieved of its contribution obligations to KERS even if those obligations are statutory in nature. It sought a declaration that it was ineligible to participate in KERS under Kentucky Law or the Employment Retirement Income Security Act (ERISA).

Case 3:15-cv-00025-DJH   Document 47   Filed 07/20/20   Page 4 of 20 PageID #: 4301
Case 13-03019-jal   Doc 201   Filed 10/06/20   Entered 10/06/20 14:23:50   Page 4 of 20

Nos. 16-5569 / 5644, *Ky. Employees Retirement, et al v. Seven Counties Services, Inc.*

KERS moved to dismiss Seven Counties' adversary proceeding, raising sovereign immunity as a defense. The bankruptcy court denied the motion to dismiss; KERS filed an interlocutory appeal and moved to stay Seven Counties' adversary proceeding pending the appeal of the denial of sovereign immunity. The bankruptcy court agreed not to take any action on Seven Counties' adversary proceeding during the pendency of KERS's interlocutory appeal regarding sovereign immunity.

KERS filed its own adversary proceeding, arguing that Seven Counties is a governmental unit ineligible to file under Chapter 11, that the relationship between Seven Counties and KERS is based on a statutory obligation, and that Seven Counties must fulfill that obligation during the pendency of the proceeding. After a trial on KERS's adversary complaint, the bankruptcy court held that Seven Counties is eligible to file under Chapter 11, that the relationship between Seven Counties and KERS is based on an executory contract, and that Seven Counties is not required to make any post-petition contributions under 28 U.S.C. § 959(b). The court found it unnecessary to consider the claims and defenses raised by Seven Counties in its adversary proceeding.

KERS appealed to the district court. Seven Counties filed what it called a "protective cross appeal," raising the alternative reasons—specified in its adversary proceeding—for upholding the bankruptcy decision in the event the district court found the relationship between KERS and Seven Counties to be statutory rather than contractual. The district court affirmed the bankruptcy court's conclusions regarding Seven Counties' eligibility to file, the contractual nature of the relationship between Seven Counties and KERS, and Seven Counties' entitlement to relief from making contributions during the pendency of the proceeding. It dismissed Seven Counties' cross appeal as moot.

Case 3:15-cv-00025-DJH Document 47 Filed 07/20/20 Page 5 of 20 PageID #: 4302
Case 13-03019-jal Doc 201 Filed 10/06/20 Entered 10/06/20 14:23:50 Page 5 of 20
Nos. 16-5569 / 5644, *Ky. Employees Retirement, et al v. Seven Counties Services, Inc.*

Meanwhile, the bankruptcy court confirmed Seven Counties' First Amended Plan of Reorganization on January 6, 2015, and the plan became effective February 6, 2015. During the pendency of the bankruptcy—April 6, 2013 to February 6, 2015—Seven Counties did not submit monthly reports of employee "creditable compensation" or withhold and pay employee and employer contributions to KERS that would have been due had such monthly reports been filed. K.R.S. §§ 61.560(1), .560(2), .560(4), 61.565(1), 61.675(3); 105 K.A.R. 1:140. Based on Seven Counties' annual payroll and the applicable employer contribution rates, KERS claims that Seven Counties was statutorily obligated to pay KERS $30,323,775.31 during that period.

KERS appealed the district court's ruling to this court. Seven Counties cross appealed to preserve its alternative arguments for affirming the decisions of the bankruptcy and district courts. We affirmed the conclusion that Seven Counties is eligible to file under Chapter 11 because the Commonwealth of Kentucky does not exercise the requisite degree of control over Seven Counties to render it a governmental unit or state instrumentality under the Bankruptcy Code. But lacking state court precedent characterizing the nature of the relationship between Seven Counties and KERS, we certified that question to the Kentucky Supreme Court. We explained that if the Kentucky Supreme Court found the relationship to be statutory in nature, "Seven Counties would be unable to reject its obligations to participate as an executory contract, which would resolve the core claim raise in KERS's adversary proceeding." *Kentucky Employees Ret. Sys.*, 901 F.3d at 731. The "issue of whether that obligation must be faithfully maintained during the pendency of proceedings under 28 U.S.C. § 959(b) would remain." *Id.*

Before the Kentucky Supreme Court answered the certified question or this court entered a final judgment in this case, KERS filed a petition for rehearing en banc, which we held in abeyance pending a response from the Kentucky Supreme Court and entry of final judgment.

Case 3:15-cv-00025-DJH Document 47 Filed 07/20/20 Page 6 of 20 PageID #: 4303
Case 13-03019-jal Doc 201 Filed 10/06/20 Entered 10/06/20 14:23:50 Page 6 of 20

Nos. 16-5569 / 5644, *Ky. Employees Retirement, et al v. Seven Counties Services, Inc.*

The Kentucky Supreme Court then held that Seven Counties' participation in and contributions to KERS are based on a statutory obligation. *Kentucky Employees Ret. Sys.*, 580 S.W.3d at 532. The Court determined that Seven Counties payments to KERS qualified as "statutorily mandated assessments" under Kentucky law. *Id.* at 544.

## II. ANALYSIS

We must now determine whether 28 U.S.C. § 959(b) required Seven Counties to continue, throughout the pendency of the proceedings, to fulfill its statutory obligation to contribute to KERS. The text of § 959(b) resolves much of this issue. That section provides, in relevant part:

> (b) . . . [A] trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager *according to the requirements of the valid laws of the State* in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

28 U.S.C. § 959(b) (emphasis added).

K.R.S. Chapter 61 and the related regulations in K.A.R. Title 105 frame Seven Counties' participation in KERS and require it to submit monthly reports of employee "creditable compensation," and to withhold and pay both the employee and employer contributions to KERS based on these monthly reports. K.R.S. §§ 61.560(1), .560(2), .560(4), 61.565(1), 61.675(3); 105 K.A.R. 1:140. The Kentucky Supreme Court concluded that these valid state laws impose "statutorily mandated assessments" on Seven Counties. *Kentucky Employees Ret. Sys.*, 580 S.W.3d at 544. The parties dispute whether § 959(b) requires compliance with these state laws in the circumstances of this case.

Seven Counties first argues that § 959(b) does not apply to the statutory framework governing its relationship with KERS because § 959(b) "has not been extended beyond" the realm of laws enforcing a state's police power to protect the health and safety of its citizens. It is true

Case 3:15-cv-00025-DJH Document 47 Filed 07/20/20 Page 7 of 20 PageID #: 4304
Case 13-03019-jal Doc 201 Filed 10/06/20 Entered 10/06/20 14:23:50 Page 7 of 20

Nos. 16-5569 / 5644, *Ky. Employees Retirement, et al v. Seven Counties Services, Inc.*

that this court has approved § 959(b)'s use only rarely—as, for example, in cases involving hazardous waste cleanup, *see In re Wall Tube & Metal Products Co.*, 831 F.2d 118, 119 (6th Cir. 1987), or termination of utilities service without notice, *see Robinson v. Michigan Consol. Gas Co. Inc.*, 918 F.2d 579, 585–86 (6th Cir. 1990). KERS cites no cases in which § 959(b) has been invoked to require payments into a pension system. But the lack of such enforcement cases is likely because it is recognized that companies may discharge pension obligations in Chapter 11 reorganization proceedings. *See* 29 U.S.C. § 1341(c)(2)(B)(ii)(IV) (permitting a bankruptcy court to approve the termination of a single-employer pension plan during Chapter 11 reorganization). Pension obligations, moreover, are typically not based on state law statutory obligations, though such is the circumstance here.

KERS argues that § 959(b)'s plain language does not allow a debtor to selectively choose which valid state laws to follow. It is correct that the statute does not specify that it applies only to state laws enforcing police powers. And that we have only had occasion to apply § 959(b) in circumstances involving public health and safety does not create a limiting principle where none exists in the statutory text.

KERS's argument that § 959(b)'s text applies more broadly than solely to health and safety laws finds some support in cases from other circuits. For example, in *Alabama Surface Mining Commission v. N.P. Mining Co.* (*In re N.P. Mining Co.*), the Eleventh Circuit concluded that § 959(b) required a Chapter 11 debtor to pay state-law fines imposed for mining violations, even though the violations were unrelated to public health or safety and the fines themselves were purely punitive. 963 F.2d 1449, 1453, 1458 (11th Cir. 1992). Similarly, in *Texas Comptroller of Public Accounts v. Megafoods Stores, Inc.* (*In re Megafoods Stores, Inc.*), and *Al Copeland Enterprises, Inc. v. Texas* (*Matter of Al Copeland Enterprises, Inc.*), the Ninth Circuit and the Fifth Circuit,

Case 3:15-cv-00025-DJH Document 47 Filed 07/20/20 Page 8 of 20 PageID #: 4305
Case 13-03019-jal Doc 201 Filed 10/06/20 Entered 10/06/20 14:23:50 Page 8 of 20

Nos. 16-5569 / 5644, *Ky. Employees Retirement, et al v. Seven Counties Services, Inc.*

respectively, held that § 959(b) compelled the payment of statutorily imposed interest on state sales tax monies that the debtors had collected but failed to remit to the state. *In re Megafoods*, 163 F.3d 1063, 1069–70 (9th Cir. 1998); *Matter of Copeland*, 991 F.2d 233, 237–38 (5th Cir. 1993). Both circuits reasoned that because § 959(b) "requires that trustees manage estates in compliance with state law," and because the state law in both cases established a particular interest rate for delinquent taxes, the debtors had to pay the statutorily mandated rate of interest with respect to the sales tax funds, regardless of the actual interest that had accrued. *In re Megafoods*, 163 F.3d at 1069; *accord Matter of Copeland*, 991 F.2d at 237–38.

The Kentucky Supreme Court found that Seven Counties' payments to KERS were statutorily mandated assessments. Applying § 959(b)'s plain language (and considering its application by other circuits), we must conclude that Seven Counties was required to manage its property according to the valid state laws and make contributions during the pendency of the bankruptcy proceeding.

The dissent reads far more into the Kentucky Supreme Court's answer to our certified question than is possible. As our earlier opinion made clear, whether Seven Counties was eligible to file for Chapter 11 bankruptcy is a question distinct from the nature of its relationship with KERS. The Kentucky Supreme Court's conclusion that the relationship is statutory rather than contractual has no impact on our earlier determination that the Commonwealth of Kentucky does not exercise the necessary forms of control over Seven Counties for the private non-profit organization to be a governmental unit.

Seven Counties' remaining arguments concerning why it did not need to make contributions during the pendency of the proceedings are without merit. First, it argues that the statutory language making it eligible to participate in KERS does not actually cover Seven

Case 3:15-cv-00025-DJH  Document 47  Filed 07/20/20  Page 9 of 20 PageID #: 4306
Case 13-03019-jal  Doc 201  Filed 10/06/20  Entered 10/06/20 14:23:50  Page 9 of 20

Nos. 16-5569 / 5644, *Ky. Employees Retirement, et al v. Seven Counties Services, Inc.*

Counties. This argument is at odds with the Kentucky Supreme Court's conclusion that the relationship between Seven Counties and KERS is based on statutory obligations, which the Court treated as valid. *See Kentucky Employees Ret. Sys.*, 580 S.W.3d at 546. The statutory scheme provides that, "[f]or purposes of [the statutes governing KERS], . . . any . . . body, entity, or instrumentality designated by executive order by the Governor, shall be deemed to be a department, notwithstanding whether said body, entity, or instrumentality is an integral part of state government." K.R.S. § 61.510(3). Seven Counties claims that this provision cannot be interpreted according to its plain meaning as it would permit "literally any entity, thing, or human" to be designated a participating department. But there is no evidence that Kentucky has taken its ability to designate entities as departments to illogical extremes, and this court must give effect to the plain language of the statute that designates Seven Counties as a department. Seven Counties also relies heavily on our prior finding that it is not a governmental unit or state instrumentality to support its argument that it is also not a department, but K.R.S. § 61.510(3) expressly designates Seven Counties a department without regard to whether it is an integral part of the state government.

Seven Counties next claims that it does not remain qualified to participate. It is true that under the statutory scheme, a department may continue to participate only "as long as it remains qualified." K.R.S. § 61.520(4)(a). But § 61.520(3) specifically declares "each participating . . . board for mental health" to be a participating department; that includes Seven Counties. Absent a clear statutory definition of the word "qualified" that demonstrates Seven Counties' ineligibility, we are bound by the statutory scheme that specifically envisions covering mental health boards. Likewise, if Seven Counties were ineligible to participate in KERS under Kentucky law, the

Case 3:15-cv-00025-DJH Document 47 Filed 07/20/20 Page 10 of 20 PageID #: 4307
Case 13-03019-jal Doc 201 Filed 10/06/20 Entered 10/06/20 14:23:50 Page 10 of 20

Nos. 16-5569 / 5644, *Ky. Employees Retirement, et al v. Seven Counties Services, Inc.*

Kentucky Supreme Court would have said so when it concluded that Seven Counties' contribution obligations were statutorily mandated assessments.

Seven Counties also argues that it was unqualified to participate in KERS under ERISA because the System is an ERISA-exempt "governmental plan" and Seven Counties is a private employer. "The term 'governmental plan' means a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002; 26 U.S.C. § 414. The Department of Labor, however, has held that "participation by a de minimis number of private sector employees will not adversely affect a plan's status as a governmental plan." Benefit Programs, Op. Ltr. 2005-07A, 2005 WL 1208694, at *2 (May 3, 2005). Thus, although Seven Counties participation in KERS means that private sector employees are participating in that System—an ERISA-exempt governmental plan—their participation does not adversely affect the plan's status or lead to the conclusion that Seven Counties is unqualified to participate.

The above analysis of Seven Counties' arguments for affirming the bankruptcy court's judgment in its favor in KERS's adversary proceeding addresses the legal issues underlying Seven Counties' adversary complaint. It is therefore unnecessary for us to resolve whether Seven Counties' cross appeal is properly before this court given KERS's pending interlocutory appeal of its sovereign immunity defense.

A few housekeeping issues remain. KERS argues that the Court can and should address its petition for rehearing en banc even though no final judgment has issued in this case. Federal Rule of Appellate Procedure 40 provides that a petition may be filed "within 14 days after entry of judgment." Our earlier decision did not dispose of this appeal in its entirety and no judgment

Case 3:15-cv-00025-DJH Document 47 Filed 07/20/20 Page 11 of 20 PageID #: 4308
Case 13-03019-jal Doc 201 Filed 10/06/20 Entered 10/06/20 14:23:50 Page 11 of 20

Nos. 16-5569 / 5644, *Ky. Employees Retirement, et al v. Seven Counties Services, Inc.*

issued. As a result, KERS's petition for en banc review is premature. Once a final judgment has entered in this case, KERS may file an amended petition.

KERS requests that we order Seven Counties to pay it $30,323,775.31 for contribution obligations between April 6, 2013 and February 5, 2015. It bases this figure on Seven Counties' annual payroll and the relevant contribution rates of 24%, 27%, and 39% during the pendency of the bankruptcy proceedings. Without Seven Counties' reports regarding "creditable compensation" for the relevant period, however, we cannot check KERS's math. We leave it to the bankruptcy court to determine the amount that Seven Counties should be ordered to pay after Seven Counties provides monthly employer reports to KERS for April 6, 2013 to February 5, 2015. We emphasize that an informal resolution may be appropriate at this stage. It is possible that the relevant facts have shifted since 2013 when the bankruptcy court found that under the drastically high contribution rates imposed, Seven Counties could either perform its charitable mission or make contributions to KERS, but it could not do both. To the extent that this is still the reality, however, Kentucky has an interest in avoiding a result that leaves approximately 33,000 Kentucky citizens without safety-net mental health services.

### III.  CONCLUSION

For the foregoing reasons and the reasons detailed in our prior opinion, we **AFFIRM** our decision that Seven Counties is eligible to file under Chapter 11; **REVERSE** the conclusions that Seven Counties can reject its obligation to participate as an executory contract and that Seven Counties need not maintain its statutory contribution obligations during the pendency of the bankruptcy; **DISMISS** Seven Counties' cross appeal, and **REMAND** the case for further proceedings consistent with this opinion.

Case 3:15-cv-00025-DJH Document 47 Filed 07/20/20 Page 12 of 20 PageID #: 4309
Case 13-03019-jal Doc 201 Filed 10/06/20 Entered 10/06/20 14:23:50 Page 12 of 20
Nos. 16-5569 / 5644, *Ky. Employees Retirement, et al v. Seven Counties Services, Inc.*

**McKEAGUE, Circuit Judge, concurring in part and dissenting in part.** I concur in the majority's conclusion that Seven Counties is required to fulfill its statutory obligations to the Kentucky Employees Retirement System (KERS). But we never should have reached that question, because Seven Counties should not be eligible to file for bankruptcy under Chapter 11 of the Bankruptcy Code. Seven Counties is an "instrumentality" of the Commonwealth of Kentucky. The majority's contrary conclusion defies that word's ordinary meaning, ignores Congressional intent, and interferes with state sovereignty. I laid out this position in more detail in my previous dissent, *see Ky. Emps. Ret. Sys. v. Seven Ctys. Servs., Inc.*, 901 F.3d 718, 732–46 (6th Cir. 2018) (McKeague, J., dissenting), but it is worth reiterating here. In addition, the Kentucky Supreme Court's well-reasoned opinion validates my concerns and undermines the majority's conclusion about Seven Counties' eligibility for Chapter 11 filing. *Ky. Emps. Ret. Sys. v. Seven Ctys. Servs., Inc.*, 580 S.W.3d 530 (Ky. 2019).

At issue in this case is what it means to be a "governmental unit" under the Bankruptcy Code. Seven Counties is filing for bankruptcy under Chapter 11 of the code, and it can do so only if it is a "person" under the statute. *See* 11 U.S.C. § 109(a). But a "governmental unit" is generally not a person. *Id.* § 101(41). A "governmental unit" includes, among other things, an "instrumentality" of a state. 11 U.S.C. § 101(27). If Seven Counties is an "instrumentality" of Kentucky, then it cannot file under Chapter 11, and its petition must be dismissed. Seven Counties' only route to bankruptcy relief would then be Chapter 9 of the code. And Chapter 9 requires, among other things, that the debtor be "specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter." *Id.* § 109(c)(2).

Nos. 16-5569 / 5644, *Ky. Employees Retirement, et al v. Seven Counties Services, Inc.*

The statute does not define the term "instrumentality." But that doesn't mean we have no guiding principles. Quite the opposite. Congress meant for "governmental unit" to be interpreted in the "broadest sense." *See* H.R. Rep. No. 95-595, at 311 (1977). And for good reason: state sovereignty. States' control over their instrumentalities' ability to declare bankruptcy goes to the heart of their ability to manage their own affairs. A proper reading of the Bankruptcy Code, then, respects states' ability to control whether their instrumentalities file for bankruptcy.

Informed by these concerns for state sovereignty, I would interpret the term "instrumentality" according to its ordinary meaning. That's what the Supreme Court has told us to do when a statutory term is left undefined. *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 566 (2012). According to *Webster's*, an "instrumentality" is "something by which an end is achieved," or "something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out." *Webster's New Int'l Dictionary* 1172 (3d ed. 1976). From this definition, we can draw three elements:

> (1) a state or its municipality creates or designates an intermediary or agent;
> (2) the intermediary or agent carries out one or more traditional government functions; and
> (3) the state or its municipality retains a degree of sovereign control over the intermediary's or agent's existence or designation and its exercise of one or more traditional government functions.

Seven Counties satisfies all three elements and thus qualifies as Kentucky's instrumentality.

*First*, Seven Counties is an "intermediary or agent" of Kentucky. Behavioral health services were once provided by the Commonwealth directly, through its Department of Mental Health. *See* R. 1, PID 532, 537–38; *see also Ky. Emps. Ret.*, 580 S.W.3d at 532–33. After the Community Mental Health Act of 1963, Pub. L. No. 88-164, 77 Stat. 282, Kentucky transitioned to community mental health centers (CMHCs). *Ky. Emps. Ret.*, 580 S.W.3d at 532. But even

-13-

Case 3:15-cv-00025-DJH Document 47 Filed 07/20/20 Page 14 of 20 PageID #: 4311
Case 13-03019-jal Doc 201 Filed 10/06/20 Entered 10/06/20 14:23:50 Page 14 of 20

Nos. 16-5569 / 5644, *Ky. Employees Retirement, et al v. Seven Counties Services, Inc.*

though the CMHCs are not government departments like the Department of Mental Health was, they are still intermediaries or agents of Kentucky. Seven Counties, as a designated CMHC, is the single agency fully tasked by the Commonwealth with providing mental-health services to a seven-county area. Seven Counties derives its authority to administer its programs and services from an act of Kentucky's legislature, *see* Ky. Rev. Stat. § 210.380, receives the vast majority of its revenue from Kentucky's coffers, *see* R. 16-3, PID 2476, and operates its centers under the oversight of Kentucky's Cabinet for Health and Family Services, *see, e.g.*, Ky. Rev. Stat. § 210.430. Indeed, in the words of one former Cabinet Secretary, CMHCs like Seven Counties are the Cabinet's "arms and legs" when it comes to behavioral health services. R. 16-2, PID 2358. All this shows how Kentucky has designated Seven Counties as its agent.

Consider, too, how the Kentucky Supreme Court describes the Commonwealth's transition from the Department of Mental Health to the CMHCs. After the Community Mental Health Act was passed, in the court's words, "Kentucky *chose* to provide services *through* CMHCs." *Ky. Emps. Ret.*, 580 S.W.3d at 532 (emphasis added). This is the type of language you'd use to describe designating someone as your intermediary or agent.

In its earlier opinion, the majority made much of the fact that private individuals incorporated Seven Counties as a nonprofit. But Seven Counties is not just any nonprofit. Its very name stems from its special status as the designated CMHC for seven counties in Kentucky. *See* Ky. Rev. Stat. § 210.380. And Seven Counties did not receive this status purely through the general incorporation laws. Here again, the Kentucky Supreme Court said it best: "To become a CMHC in Kentucky, an entity first has to be a non-profit organization *and* receive designation from the Kentucky Cabinet for Health and Family Services." *Ky. Emps. Ret.*, 580 S.W.3d at 532 (emphasis added). This designation process with the state government is no mere rubber stamping: "Prior to

Case 3:15-cv-00025-DJH Document 47 Filed 07/20/20 Page 15 of 20 PageID #: 4312
Case 13-03019-jal Doc 201 Filed 10/06/20 Entered 10/06/20 14:23:50 Page 15 of 20

Nos. 16-5569 / 5644, *Ky. Employees Retirement, et al v. Seven Counties Services, Inc.*

the designation of an organization as a CMHC, the Kentucky Cabinet for Health and Family Services . . . reviews an organization's bylaws, board composition and operations to determine whether they meet minimum standards." *Id.* at 532 n.1. This process illustrates how Seven Counties is not simply a nonprofit organization, but a designated agent of the Kentucky state government.

*Second*, Seven Counties carries out a traditional government function. On this point, again we need look no further than the Kentucky Supreme Court's opinion. "[T]reating the mentally ill" is a traditional government function because, as the Kentucky Supreme Court observed, "[h]istorically, states were responsible for" it. *Id.* at 532. Kentucky did so through its Department of Mental Health. *See id.* at 532–33. It was only after the Community Mental Health Act was passed that "Kentucky chose to provide services through CMHCs, passing laws that enabled their creation and regulation." *Id.* at 532.

Indeed, just as the provision of mental-health services moved from Kentucky's Department of Mental Health to the CMHCs, so too did the state employees. Many of the first employees of one of the first Kentucky CMHCs "were former employees of the Kentucky Department of Mental Health." *Id.* at 533. As such, they were "reluctant to leave the state system and give up retirement benefits accrued through KERS." *Id.* That's why the governor issued an executive order allowing CMHCs to participate in KERS. *Id.* So, when it comes to treating the mentally ill, we have a traditionally governmental function that was being carried out by state employees, and those same state employees moved to the CMHCs pursuant to a decision from the Kentucky government itself.

This history illustrates how CMHCs like Seven Counties are the successors to the old Kentucky Department of Mental Health and thus carry out a traditional government function.

Case 3:15-cv-00025-DJH   Document 47   Filed 07/20/20   Page 16 of 20 PageID #: 4313
Case 13-03019-jal    Doc 201    Filed 10/06/20    Entered 10/06/20 14:23:50    Page 16 of 20

Nos. 16-5569 / 5644, *Ky. Employees Retirement, et al v. Seven Counties Services, Inc.*

*Third*, Kentucky retains a degree of sovereign control over Seven Counties. Seven Counties submits its plan, budget, and board membership for each fiscal year to Kentucky's Cabinet for Health and Family Services. Ky. Rev. Stat. § 210.430. Unless the Cabinet Secretary signs off on the plan and budget, Seven Counties' programs are not eligible for any state grant or other fund allocation from the Cabinet. *Id.* Nor are those programs eligible if Seven Counties' board membership doesn't meet the statutory standard. *See id.*; Ky. Rev. Stat. § 210.380.

Also, the Cabinet retains the power to take over and even de-designate Seven Counties. If certain conditions are met, the Cabinet can appoint a caretaker to operate and administer Seven Counties' programs and make personnel changes. *See id.* § 210.440(3)–(4). And the Cabinet can withdraw its recognition of Seven Counties as the designated program administrator for its area. *See id.* § 210.440(2), (4). Put simply, the Cabinet can withdraw Seven Counties from its seven counties. Kentucky thus unquestionably retains a degree of sovereign control over Seven Counties.

Having satisfied all three elements of "instrumentality" under that term's ordinary meaning, Seven Counties qualifies as an instrumentality of the Commonwealth of Kentucky. Any contrary conclusion thus goes against the ordinary meaning of the statute. For that reason alone, the majority was incorrect to allow Seven Counties to file under Chapter 11. But the majority compounded its error by refusing to defer to Kentucky's classification of Seven Counties as a governmental entity.

*Statutory Classification*. The majority made several errors in rejecting the ordinary-meaning approach. But even the majority acknowledged that we should hesitate to second-guess a state's classification of its own governmental entities. *Ky. Emps. Ret.*, 901 F.3d at 730. However, the majority then went on to disregard Kentucky's classification of Seven Counties as a governmental entity. My colleagues reached this conclusion despite Kentucky's determination that

Case 3:15-cv-00025-DJH Document 47 Filed 07/20/20 Page 17 of 20 PageID #: 4314
Case 13-03019-jal Doc 201 Filed 10/06/20 Entered 10/06/20 14:23:50 Page 17 of 20

Nos. 16-5569 / 5644, *Ky. Employees Retirement, et al v. Seven Counties Services, Inc.*

an entity like Seven Counties participating in KERS is "deemed to be a department, notwithstanding whether said body, entity, or instrumentality is an integral part of state government." Ky. Rev. Stat. § 61.510(3). Nor did my colleagues recognize that Seven Counties in fact satisfies Kentucky's statutory criteria for a "special purpose governmental entity." *See* Ky. Rev. Stat. §§ 210.400(8); 65A.010–.090; *see also Ky. Emps. Ret.*, 901 F.3d at 740 (McKeague, J., dissenting). And now, the Kentucky Supreme Court's opinion, declaring that the relationship between KERS and Seven Counties is statutory, reinforces how Kentucky has classified Seven Counties as a governmental entity.[1]

Seven Counties had tried to distance itself from the Kentucky government by claiming its participation in KERS was contractual, not statutory. The argument was important for bankruptcy purposes because it was the primary basis Seven Counties cited for rejecting its employer contributions to KERS. But the argument also reinforced Seven Counties' position that it was separate from the Kentucky government, at least to the extent necessary to file under Chapter 11. It's easier to see Seven Counties as a separate entity—and hence not an "instrumentality" of Kentucky—if one of its important relationships with the Kentucky government, its participation in KERS, is contractual, not statutory.

But a unanimous Kentucky Supreme Court rejected this position. *Ky. Emps. Ret.*, 580 S.W.3d at 546. To see why, we need to look at the process for joining KERS. KERS itself is a creature of statute. *Id.* at 537. "Participation in KERS has always been controlled by statute and has always entailed the Governor issuing an executive order." *Id.* Against that statutory backdrop, Seven Counties first sought an advisory opinion from the state attorney general, asking whether it

---

[1] The majority claims I am reading too far into the Kentucky Supreme Court's opinion. But surely, when it comes to how Kentucky classifies Seven Counties, we should be looking at the Kentucky Supreme Court's decision on how Kentucky law classifies Seven Counties as it relates to KERS.

Case 3:15-cv-00025-DJH Document 47 Filed 07/20/20 Page 18 of 20 PageID #: 4315
Case 13-03019-jal Doc 201 Filed 10/06/20 Entered 10/06/20 14:23:50 Page 18 of 20
Nos. 16-5569 / 5644, *Ky. Employees Retirement, et al v. Seven Counties Services, Inc.*

would be eligible to participate in KERS. *Id.* at 537–38. After getting the green light from the AG, Seven Counties asked for an executive order allowing it to participate in the retirement system. *Id.* at 538.[2] And the governor issued just such an executive order in January 1979, designating Seven Counties as a participant in KERS. *Id.* at 538.

Notwithstanding the executive order, Seven Counties insisted that it joined KERS through a "voluntary arrangement" better understood as a contract. *Id.* at 542. The "offer" was Seven Counties' request to join KERS, and the "acceptance" was the governor's executive order. *Id.* The terms of the contract were filled in by the statutory and regulatory framework, sort of like how the Uniform Commercial Code can supply contract terms in sales of goods. *Id.* at 542, 544. Thus, according to Seven Counties, it entered into a contract with KERS.

The problem, as the Kentucky Supreme Court put it, is that's not what the statute says. "The plain language" of the relevant statute "precludes any finding that the Governor was authorized to contract with any department . . . for participation in KERS." *Id.* at 539 (citing Ky. Rev. Stat. § 61.520). The statute never gave the governor the power to contract—it gave him the power to issue executive orders. *Id.* "The word 'contract' and the concepts of offer, acceptance and consideration are never used" in the statute. *Id.* Seven Counties was, in effect, asking the court to either read new words into the statute or else interpret the existing words in a way that contradicted their plain meaning. *Id.* That was something the Kentucky Supreme Court simply would not do. *Id.* Incidentally, in interpreting its own state law, the Kentucky Supreme Court did exactly what we should have done when interpreting the Bankruptcy Code: interpreted the statute according to its ordinary meaning.

---

[2] We do not have Seven Counties' request to join KERS in the record, but the governor's executive order references a request from Seven Counties' board of directors. *See id.*

Case 3:15-cv-00025-DJH Document 47 Filed 07/20/20 Page 19 of 20 PageID #: 4316
Case 13-03019-jal Doc 201 Filed 10/06/20 Entered 10/06/20 14:23:50 Page 19 of 20

Nos. 16-5569 / 5644, *Ky. Employees Retirement, et al v. Seven Counties Services, Inc.*

In short, the court found "no support in either the facts or the law" for Seven Counties' contract theory. *Id.* at 546. On the contrary, Seven Counties' payments to KERS are "essentially assessments, statutorily-imposed contributions to the KERS trust fund required of the employer in order for its employees to be members of KERS." *Id.* Accordingly, "[t]he relationship between KERS and Seven Counties is and always has been purely statutory." *Id.*

Not just that. Not only does Seven Counties have a statutory relationship with KERS; it also entered that statutory relationship in the same way that all other participating departments do. "[F]rom [KERS'] inception and continuing through to 2019, even traditional departments of state government have gained entrance to the KERS only by executive order as mandated by statute." *Id.* at 537. So when it comes to participating in KERS, Seven Counties and "traditional departments of state government" are on the same footing.

Thus, the Kentucky Supreme Court's decision reinforces my conclusion that Kentucky's statutory classification of Seven Counties supports Seven Counties' status as an "instrumentality." After going through the statutory process for entering KERS, Seven Counties was "deemed to be a department." Ky. Rev. Stat. § 61.510(3). It was so deemed as a matter not of contract, but of statute. And Seven Counties achieved this statutory designation in the same way as "traditional departments of state government," *Ky. Emps. Ret.*, 580 S.W.3d at 537—such as those that are, say, "integral part[s] of state government," Ky. Rev. Stat. § 61.510(3). Put another way, Seven Counties is treated the same way as other departments that Kentucky has designated as its governmental entities.

If we were truly respecting state sovereignty, we would be deferring to Kentucky's statutory classification. But the majority does not. Its failure to do so further restricts the state's ability to manage its own affairs. It also ignores Congress's command to interpret the bankruptcy

-19-

Case 3:15-cv-00025-DJH  Document 47  Filed 07/20/20  Page 20 of 20 PageID #: 4317
Case 13-03019-jal    Doc 201    Filed 10/06/20    Entered 10/06/20 14:23:50    Page 20 of 20

Nos. 16-5569 / 5644, *Ky. Employees Retirement, et al v. Seven Counties Services, Inc.*

statute "in the broadest sense" in order to protect state sovereignty. *See* H.R. Rep. No. 95-595, at 311 (1977).

***

Up until our previous decision in this case, neither this court nor any other circuit had developed a test for what constitutes an "instrumentality" under the relevant section of the Bankruptcy Code. But that does not give us free rein to trample on state sovereignty. Nor does it give us license to flout the ordinary meaning of the statutory term itself. The majority, however, did both.

By reaffirming its earlier reasoning, the court repeats its error today. I concur in the majority's resolution of the few remaining issues before our court. But on the question of whether Seven Counties can file under Chapter 11, the majority used the wrong test and reached the wrong result. So, on that issue, I respectfully dissent.